2007 WY 97

QWEST CORPORATION, Appellant
(Petitioner),

v.

The PUBLIC SERVICE COMMISSION OF WYOMING, Steve Furtney, Chairman, Kathleen Lewis, Deputy Chairman, and Mary Byrnes, Commissioner, Appellee (Respondent),

and

Silver Star Communications, Inc., Appellee (Intervenor).

No. 06–102.

Supreme Court of Wyoming.

June 19, 2007.

Representing Appellant: Paul J. Hickey and Roger C. Fransen, Hickey & Evans, LLP, Cheyenne, Wyoming; Barbara J. Brohl, Qwest Corporation, Denver, Colorado. Argument by Mr. Hickey.

Representing Appellee Public Service Commission of Wyoming: Patrick J. Crank, Attorney General; Michael L. Hubbard, Deputy Attorney General; Ryan Schelhaas, Senior Assistant Attorney General, Stephanie Anesi, Assistant Attorney General; Argument by Ms. Anesi.

Representing Appellee Silver Star Communications, Inc.: James K. Sanderson, Sanderson Law Office, Afton, Wyoming; Bruce Asay, Associated Legal Group, Cheyenne, Wyoming. Argument by Mr. Sanderson.

Counsel for Amicus Curiae: Christopher Petrie, Wyoming Office of Consumer Advocate.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶1] In this appeal, Qwest Corporation ("Qwest") questions the authority of the Wyoming Public Service Commission ("PSC") under the Wyoming Telecommunications Act of 1995, Wyo. Stat. Ann. §§ 37–15–101 through 37–15–502 (LexisNexis 2005) (the "Act"). In an administrative proceeding, the PSC rejected Qwest's 2004 Total Service Long–Run Incremental Cost Study ("TSLRIC Study") and ordered Qwest to submit an exchange-specific TSLRIC Study for the Afton, Wyoming, Exchange. Qwest contends that the PSC lacks statutory authority to order a TSLRIC Study for the Afton Exchange. We disagree, and affirm the PSC decision.

## I. Issue

[¶ 2] All of the parties present the same issue in different language. We state the issue as follows:

> Did the PSC exceed its statutory authority when it ordered Qwest to prepare and submit an exchange-specific TSLRIC Study for the Afton Exchange?

## II. Standard of Review

■ [¶ 3] The sole issue in this case is the extent of the PSC's statutory authority. As set forth in the Wyoming Administrative Procedure Act, the Court will interpret the statutory provisions, and set aside the agency's action if it exceeds the agency's statutory authority. Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005). Statutory interpretation is a question of law, so our review is *de novo*. *Chevron U.S.A., Inc. v. Department of Revenue*, 2007 WY 43, ¶ 9, 154 P.3d 331, 334 (Wyo.2007).

## III. Background and Facts

[¶ 4] The express intent of the Wyoming Telecommunications Act is to promote transition from a monopolistic, noncompetitive telecommunications industry to competitive markets. Wyo. Stat. Ann. § 37–15–102. One tool the PSC uses to promote competition is a Total Service Long–Run Incremental Cost Study, referred to in the industry by the awkward acronym "TSLRIC." In simplified terms, a TSLRIC Study estimates the theoretical cost of replacing an existing telecommunications network. Wyo. Stat. Ann. § 37–15–103(a)(xiii). In other words, it provides an estimate of what it would cost a potential competitor to establish a new, competing network.

[¶ 5] The Act requires companies to charge prices high enough to recover TSLRIC costs. Wyo. Stat. Ann. § 37–15–402(a). Thus, an established company may not set prices so low as to discourage a potential competitor from establishing a new,

competing network. Because they set a floor price for telecommunications services, TSLRIC Studies help to promote competition. *See US West Communications, Inc. v. Public Service Comm'n*, 992 P.2d 1092 (Wyo. 1999).

[¶ 6] Telecommunications providers must submit TSLRIC Studies to the PSC for review and approval at least once every three years. Wyo. Stat. Ann. § 37–15–402(a). On November 1, 2004, Qwest submitted its 2004 TSLRIC Study to the PSC for review and approval. The Wyoming Office of Consumer Advocate [1] and Silver Star Communications, Inc.[2] ("Silver Star") intervened in the administrative proceeding.

[¶ 7] Following the hearing, the PSC rejected Qwest's 2004 TSLRIC Study, and ordered Qwest to prepare and submit an exchange-specific TSLRIC Study for the Afton Exchange. After its request for rehearing was denied, Qwest filed a petition for judicial review with the district court. The district court certified the case to this Court pursuant to W.R.A.P. 12.09(b).

## IV. Discussion

### A. Jurisdiction

■ [¶ 8] As a threshold question, we must consider the issue of subject matter jurisdiction. The parties did not raise the issue, but subject matter jurisdiction may be considered on the Court's own motion. *Thunder Basin Coal Co. v. Campbell County*, 2006 WY 44, ¶ 36, 132 P.3d 801, 813 (Wyo. 2006). Indeed, we have a duty to satisfy ourselves that we have jurisdiction to entertain an appeal. *Plymale v. Donnelly*, 2006 WY 3, ¶ 4, 125 P.3d 1022, 1023 (Wyo.2006).

■ [¶ 9] In the administrative proceeding below, the PSC entered a "Final Order" on April 29, 2005. In general, petitions for judicial review must be filed within thirty days after the final agency decision. W.R.A.P. 12.04(a). Qwest did not file a petition for judicial review within that period, but

---

**1.** The Wyoming Office of Consumer Advocate is an independent division of the PSC whose statutory duty is to represent the interests of Wyoming citizens and utility customers in matters involving public utilities. Wyo. Stat. Ann. § 37–2–401

(LexisNexis 2005). It filed an amicus brief in this appeal.

**2.** Silver Star is a competitor with Qwest, particularly in the area in and around Afton, Wyoming.

instead filed a petition for rehearing on May 26, 2005. The PSC denied the petition on December 12, 2005, and Qwest filed its petition for judicial review on January 11, 2006.

[¶ 10] If Qwest's petition for rehearing tolled the thirty-day appeal deadline, then its appeal was timely, and the Court has jurisdiction. If Qwest's petition for rehearing did not toll the appeal deadline, its appeal was untimely, and the Court lacks jurisdiction. This issue has troubled the Court before. *See Hupp v. Employment Security Comm'n*, 715 P.2d 223 (Wyo.1986); *Rosenberger v. City of Casper Bd. of Adj.*, 765 P.2d 367 (Wyo.1988).

[¶ 11] In *Jackson Paint and Glass v. Jackson Bd. of Adjustment*, 811 P.2d 293, 294 (Wyo.1991), the town's Zoning Board denied a variance on March 7, 1990. A request for rehearing was made on July 12, 1990. The Zoning Board denied the request for rehearing on July 18, 1990. A petition for judicial review was filed on August 2, 1990. The Court determined that the appeal was untimely, and warned that a request for rehearing must be made "in time to allow for a petition for review within 30 days after final action by the agency denying the variance. Failure to grant a rehearing does not toll the 30 day limit." *Id.* at 295.

[¶ 12] There are two plausible interpretations of the *Jackson* decision. The first interpretation focuses on the fact that the request for rehearing was untimely. The Zoning Board's decision to deny a variance became final before the request for rehearing was made. The deadline for appealing that final decision had passed. Under this first interpretation, an untimely request for rehearing did not toll the appeal deadline, but a .timely request for rehearing would have done so. This first interpretation was urged in the concurring opinion in *Jackson*, 811 P.2d at 295, but was not embraced by the majority.

[¶ 13] The second interpretation focuses on the statement in *Jackson* that "[f]ailure to grant a rehearing does not toll the 30 day limit." This language suggests that even a

timely and valid request for rehearing does not toll the appeal deadline. That deadline would expire thirty days after the Zoning Board denied the variance, even though a timely and valid request for rehearing remained pending before the Zoning Board.

[¶ 14] The first interpretation is correct. The Wyoming Rules of Appellate Procedure clearly provide that a timely petition for rehearing extends the deadline for seeking judicial review of an agency decision.

[T]he petition for review shall be filed within 30 days after service upon all parties of the final decision of the agency **or denial of the petition for a rehearing, or, if a rehearing is held, within 30 days after service upon all parties of the decision.**

W.R.A.P. 12.04(a) (emphasis added). The statute governing the PSC's consideration of petitions for rehearing also indicates that a petition for rehearing tolls the appeal deadline.

... Applications for rehearing shall stay the effect of any order or decision of the commission only as to the portion of the order addressed in the rehearing application until the commission denies the application or enters an order following rehearing, whichever last occurs....

Wyo. Stat. Ann. § 37–2–214 (LexisNexis 2005).[3] One "effect of any order or decision" is to trigger the appeal deadline. That effect is stayed by a petition for rehearing, and the appeal deadline is tolled while the PSC considers the petition for rehearing. Both the appellate rule and the PSC statute support the first interpretation of *Jackson*.

[¶ 15] Applying this first interpretation to the case at bar, Qwest's petition for rehearing did toll the appeal deadline, despite language in *Jackson* that could be read to the contrary. Qwest's petition for judicial review was timely, and we have jurisdiction to consider this appeal.

---

3. Wyo. Stat. Ann. § 37–2–214 was amended effective July 1, 2005, while Qwest's petition for rehearing was pending before the PSC, 2005 Wyo. Sess. Laws ch. 101, § 1, but the change has no significance in this case.

## B. Qwest's arguments

[¶ 16] Qwest presents three arguments in support of its basic contention that the PSC exceeded its statutory authority when it ordered Qwest to prepare and submit an exchange-specific TSLRIC Study for the Afton Exchange. First, it argues that Wyo. Stat. Ann. § 37–15–202(a), which limits the PSC's authority to regulate prices in competitive markets, also limits the PSC's authority to require TSLRIC studies for competitive markets. Second, it argues that the PSC exceeded its statutory authority because the TSLRIC Study for the Afton Exchange was not necessary or relevant, as required by Wyo. Stat. Ann. § 37–15–401(a)(iv). Third, Qwest argues that the PSC's order requiring Qwest to prepare and submit a TSLRIC Study for the Afton Exchange is unreasonably discriminatory, in violation of Wyo. Stat. Ann. § 37–15–404(b). To put the arguments in context, we review in more detail the PSC's decision in the underlying administrative proceeding. Then each of Qwest's three arguments will be considered in turn.

### 1. The PSC's decision in the underlying administrative proceeding

[¶ 17] When Qwest submitted its 2004 TSLRIC Study to the PSC for review and approval, a key issue was whether or not the Study complied with the following provision of the PSC regulations:

> Telecommunications companies which prepare and file TSLRIC studies in accordance with these rules shall design the studies to reflect the differences in costs associated with providing local exchange service to geographically distinct groups of customers. Telecommunications companies shall provide cost information for groups of customers disaggregated to the smallest practical size, which shall consider factors as defined in Section 519(a) to (d), inclusive. TSLRIC numbers for local exchange services shall not be expressed as company wide or state wide average costs unless the telecommunications company can demonstrate that there are no significant differences in the cost of providing

telecommunications services to geographically disparate groups of customers.

PSC Rules and Regulations, ch. V, § 541.

[¶ 18] Qwest asserted that its TSLRIC Study appropriately reflected differences in costs for local exchange services in geographically distinct groups. Qwest explained that it had disaggregated cost information for four different groups of customers, based on density and distance from a central office. The first group was located in the "Base Rate Area," with the highest density of customers and the shortest distance from the central office. The remaining three groups were located in "Zone 1," "Zone 2," or "Zone 3," with progressively lower densities of customers and progressively longer distances from the central office. Qwest's TSLRIC Study keeps the four groups separate, or disaggregated. However, within each group, TSLRIC costs were averaged on a statewide basis. Thus, costs for customers in the Base Rate Area of the Afton Exchange were averaged with customers in the Base Rate Area of, for example, the Cheyenne Exchange. Similarly, costs for customers in Afton's Zone 3 were averaged with costs for customers in, for example, Cheyenne's Zone 3. Contending that its method of disaggregation presented information for groups of customers of "the smallest practical size," Qwest emphasized that the PSC had approved this method of disaggregation on previous occasions.

[¶ 19] Silver Star, on the other hand, asserted that Qwest's 2004 TSLRIC Study expressed information "as company wide or state wide average costs," and therefore, Qwest had the burden of demonstrating that "there are no significant differences in the cost of providing telecommunications services to geographically disparate groups of customers," as required by PSC Rules and Regulations, ch. V, § 541. Silver Star pointed out that Qwest, in other, earlier proceedings, had shown that the Afton Exchange was one of the most expensive to serve. Thus, Silver Star urged, Qwest's method of averaging costs in the Afton Exchange with costs in other parts of the state effectively masked significant cost differences. Silver Star asserted that Qwest should disaggregate

TSLRIC costs separately for each of its Wyoming Exchanges.

[¶ 20] The PSC found a middle course. As for the Afton Exchange, it found evidence that costs in the Afton Exchange varied materially from statewide averages. It also found that the Afton Exchange was unusual, in that it had been a competitive market for several years. Thus, the PSC concluded, Qwest had not met its burden of demonstrating no significant differences in the cost of services as between the Afton Exchange and other parts of the state. However, the PSC concluded that Qwest did not have to disaggregate TSLRIC costs separately for each of its Wyoming Exchanges. Following this middle course, the PSC made a finding of fact in its Final Order that the Afton Exchange was a

> suitable place for a test of the continuing validity of Qwest's approach to pricing and disaggregation. Thus, while we have approved of Qwest's modeling approach in the past, that does not relieve us of the ongoing duty to make certain that it continues to serve the intent of the Act into the future. This is the first time we have been presented with this fundamental challenge to Qwest's TSLRIC compliance and so we must make this examination for the first time. A further examination of the costs in the Afton exchange would help us to better understand whether the retail service prices and the level of disaggregation presented by Qwest comply with the Act.

The PSC's corresponding conclusion of law was as follows:

> We conclude that a TSLRIC study by Qwest of the Afton exchange, modeled individually and stating exchange-specific

TSLRIC results for the Afton base rate area and each of the three Afton rural zones should be required to help demonstrate the degree to which the level of disaggregation offered by Qwest in this case fairly complies with the disaggregation requirements of Section 541 of our Rules and serves the public interest as expressed in the Act. A proper demonstration would clearly show the Commission whether or not the base rate area and zone prices were in fact above the TSLRIC levels offered by Qwest in this case and would be a useful test to assist the Commission in discerning whether or not the instant study could be approved under Wyoming law as legally supportive of Qwest's Wyoming prices.

On this basis, the PSC ordered Qwest to prepare and submit an exchange-specific TSLRIC Study for the Afton Exchange.

### 2. Regulation of prices in competitive markets

[¶ 21] Under the Act, the PSC may designate certain telecommunications services as competitive. "Any service found to be effectively competitive shall not be subject to regulation of prices." Wyo. Stat. Ann. § 37–15–202(a).[4] Qwest points out that the PSC has designated services in the Afton Exchange as competitive, and so prices in the Afton Exchange are not subject to regulation. Qwest contends that, because the PSC lacks authority to regulate prices in the Afton Exchange, it also lacks authority to require a TSLRIC Study for the Afton Exchange.

[¶ 22] Qwest's contention rests on the faulty premise that TSLRIC Studies can be used only to regulate prices. In fact, as

---

4. In its entirety, Wyo. Stat. Ann. § 37–15–202(a) reads as follows:

(a) Upon petition by any telecommunications company, the commission may, after notice and opportunity for hearing, find and conclude that a telecommunications service is subject to competition. Any service found to be effectively competitive shall not be subject to regulation of prices by the commission. The commission shall consider only the following factors in determining whether a telecommunications service is subject to effective competition:

(i) The extent to which the same or equivalent telecommunications services are available from alternative providers in the relevant market;

(ii) The extent to which telecommunications services of alternative providers are functionally equivalent or may be substituted at comparable prices, terms and conditions;

(iii) Existing economic regulatory or technological barriers to entry.

discussed in more detail below, other provisions of the Act authorize other uses for TSLRIC Studies. When interpreting statutes, we construe them *in pari materia*, and avoid interpretations that would render some portions meaningless. *Kunkle v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 49, ¶ 11, 109 P.3d 887, 890 (Wyo. 2005). We cannot ignore other provisions of the Act in evaluating Qwest's proposed interpretation of Wyo. Stat. Ann. § 37–15–202(a).

[¶ 23] We begin our evaluation with Wyo. Stat. Ann. § 37–15–402(a) because it deals explicitly with TSLRIC. It states, in pertinent part:

> **Services** provided by a telecommunications company that provides noncompetitive services **shall be priced to** ensure that the service's revenues from sale of the service **recover the total service long-run incremental cost** of providing that service, except as provided in this section.

Wyo. Stat. Ann. § 37–15–402(a) [5] (emphasis added). To interpret this provision, we look first to the plain and ordinary meaning of the words in the statute and decide, as a matter of law, whether the statute is clear or ambiguous. *Powder River Coal Co. v. State Bd. of Equalization*, 2002 WY 5, ¶ 6, 38 P.3d 423, 426 (Wyo.2002). A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. *Id.* A statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. *RME Petroleum Co. v. Wyoming Dep't of Revenue*, 2007 WY 16, ¶ 25, 150 P.3d 673, 683 (Wyo.2007).

[¶ 24] Wyo. Stat. Ann. § 37–15–402(a) is clear and unambiguous. The emphasized language—**services shall be priced to recover TSLRIC costs**—is susceptible to only one reasonable interpretation. The pricing requirement applies to services, with no distinction between competitive and noncompetitive services. Having determined that the statutory language is clear, we simply give effect to that language. *RME Petroleum Co.*, ¶ 25, 150 P.3d at 683. The effect is that both competitive and noncompetitive services must be priced to recover TSLRIC costs.

[¶ 25] The contrary interpretation would require inserting an extra word into the statute, to wit: ***noncompetitive* services shall be priced to recover TSLRIC costs.** The legislature can, and did, distinguish between competitive and noncompetitive markets for some purposes. In this same statute, for example, the legislature applied the TSLRIC Study requirement only to companies that provide "noncompetitive services." The legislature did not make that distinction when it said **services shall be priced to recover TSLRIC costs.** When the legislature specifically uses a word in one place, we will not interpret that word into other places where it was not used. *In re Adoption of Voss*, Wyo., 550 P.2d 481, 485 (1976).

[¶ 26] Qwest contends that Wyo. Stat. Ann. § 37–15–202(a) prohibits the PSC from requiring TSLRIC Studies for competitive markets. However, acceptance of that interpretation would render meaningless the pricing requirement of Wyo. Stat. Ann. § 37–15–402(a). If the PSC cannot require

5. Wyo. Stat. Ann. § 37–15–402(a), in its entirety, reads as follows:

> Services provided by a telecommunications company that provides noncompetitive services shall be priced to ensure that the service's revenues from sale of the service recover the total service long-run incremental cost of providing that service, except as provided in this section. Total service long-run incremental cost studies used by a telecommunications company shall be filed with the commission every three (3) years unless required by the commission more frequently. All total service long-run incremental cost studies required pursuant to this section shall be filed in the form required by commission rule and under protective order as a trade secret and shall be subject to commission review and approval. Telecommunications companies having fewer than thirty thousand (30,000) access lines in the state are exempt from the requirement to file cost studies every three (3) years, but do remain subject to the commission powers in W.S. 37–15–401(a)(iv). A *telecommunications company having fewer than thirty thousand (30,000) access lines in the state may utilize a reasonable total service long-run incremental cost study surrogate, in lieu of conducting its own study, based on cost studies as are available for comparable, including nonregulated, telecommunications companies in this state or other states.*

TSLRIC Studies for competitive markets, it cannot determine if competitive services are priced to recover TSLRIC costs. We decline such an interpretation, and interpret Wyo. Stat. Ann § 37–15–202(a) as prohibiting the PSC from regulating prices in competitive markets, but not prohibiting the PSC from requiring TSLRIC Studies for competitive markets for purposes other than regulating prices.[6]

[¶ 27] This interpretation also harmonizes with other provisions of the Act. For example, as stated in another provision of the Act, "Revenues obtained from noncompetitive telecommunications services may not be used to subsidize competitive services. Revenues from competitive telecommunications services may not be used to subsidize noncompetitive telecommunications services." Wyo. Stat. Ann. § 37–15–403(a).[7] TSLRIC Studies would allow the PSC to determine if prices in a competitive market are too low, and subsidized by high prices in a noncompetitive market. It seems obvious that, if the PSC could not require TSLRIC Studies for competitive services, it would get only half the information it needs to enforce the statutory prohibition against cross-subsidization. Again, the more harmonious interpretation of the various sections of the Act is that the PSC has authority to require TSLRIC Stud-

ies for competitive markets, and to use them for purposes other than direct regulation of prices.

[¶ 28] Qwest relies on *US West Communications, Inc. v. Wyoming Public Service Comm'n*, 15 P.3d 722 (Wyo.2000), for the proposition that allowing the PSC to regulate competitive services is contrary to the Act's purpose of promoting competitive services. While the *US West* case does contain broad language to that effect, the ruling viewed in context is much narrower. The Court ruled that the PSC lacked authority to regulate competitive services under the specific provisions of Wyo. Stat. Ann. § 37–15–404(a). It did not rule that the PSC lacks authority to regulate competitive services for any and every purpose.

[¶ 29] In sum, we read the various sections of the Act in harmony, and interpret them as providing the PSC authority to require TSLRIC Studies for both competitive and noncompetitive markets. Under Wyo. Stat. Ann. § 37–15–202(a), the PSC may not regulate prices in competitive markets. That does not mean the PSC may not require TSLRIC Studies for competitive markets, because the Act authorizes the PSC to use TSLRIC Studies for purposes other than regulating prices. The PSC did not exceed

6. Competitive services "shall not be subject to regulation of prices." Wyo. Stat. Ann. § 37–15–202(a). However, the PSC is authorized and obligated to enforce other statutory requirements relating to competitive services. Under Wyo. Stat. § 37–15–401(a)(ii), the PSC has the power to "[r]equire any telecommunications company to conform to the laws of this state and to all rules, regulations and orders of the commission not contrary to law." This statute provides the PSC authority to enforce, for example, the requirement of Wyo. Stat. Ann. § 37–15–402(a) that services in both competitive and noncompetitive markets must recover TSLRIC costs. Thus, while the PSC may not use TSLRIC Studies to regulate prices for competitive services, it clearly has the authority to use TSLRIC Studies for other purposes.

7. Wyo. Stat. Ann. § 37–15–403(a) provides:

No telecommunications company shall use revenues earned from or allocate expenses to noncompetitive services to subsidize services determined by the commission to be subject to competition. The commission shall not require revenues or expenses from competitive services to be attributed to noncompetitive ser-

vices. Revenues obtained from noncompetitive telecommunications services may not be used to subsidize competitive services. Revenues from competitive telecommunications services may not be used to subsidize noncompetitive telecommunications services. Nothing in this subsection shall affect the assignment of any revenues received from the universal service fund for the exclusive support of high cost, local exchange services.

With regard to the PSC's authority to enforce this prohibition in competitive markets, we note that Wyo. Stat. Ann. § 37–15–403(b) provides that, "[n]otwithstanding the provisions of W.S. 37–15–104 (Services not regulated by this title) the commission may review financial information of a telecommunications company relating to the provision of any services for the purposes of enforcing this section." As noted in the previous footnote, although the PSC lacks authority to regulate prices in competitive markets, Wyo. Stat. Ann. § 37–15–202(a), it does have authority to enforce the prohibition against cross-subsidization in both competitive and noncompetitive markets.

its statutory authority when it ordered Qwest to prepare and submit an exchange-specific TSLRIC Study for the Afton Exchange.

### 3. General powers of the PSC

[¶ 30] Qwest's next argument relies on the statute that establishes the PSC's general powers in regulating communications services. In particular, Qwest relies on language providing that the PSC has authority to "[r]equire reports and studies as to prices and terms and conditions of service, necessary and relevant for the [PSC's] exercise of its authority." Wyo. Stat. Ann. § 37–15–401(a)(iv).[8] Qwest observes that an agency's authority is strictly limited to that expressly set out in the statute. *Montana Dakota Utilities Co. v. Public Service Comm'n of Wyoming*, 847 P.2d 978, 983 (Wyo.1993). Thus, Qwest says, the PSC may require reports and studies, but only to the extent they are "necessary and relevant."

[¶ 31] Qwest asserts that an exchange-specific TSLRIC Study for the Afton Exchange is neither necessary nor relevant. The PSC has no use for such a study, Qwest says, because the Afton Exchange is a competitive market, and the PSC cannot regulate prices in a competitive market. As previously discussed,[9] the PSC has other uses for TSLRIC Studies, and TSLRIC Studies may be necessary and relevant for those uses.

[¶ 32] Moreover, Qwest relies on a statute granting the PSC general powers, Wyo. Stat. Ann. § 37–15–401(a)(iv). We have already concluded that the PSC has

authority under a more specific statute, Wyo. Stat. Ann. § 37–15–402(a), to require TSLRIC Studies for competitive and non-competitive markets. Specific statutes control over general statutes involving the same subject. *Amoco Prod. Co. v. Dep't of Revenue*, 2004 WY 89, ¶ 18, 94 P.3d 430, 439 (Wyo.2004), citing *Thunderbasin Land, Livestock & Inv. Co. v. Laramie County*, 5 P.3d 774, 782 (Wyo.2000). But reading the two together, we find that the more specific statute, Wyo. Stat. Ann. § 37–15–402(a), indicates that the legislature deemed TSLRIC Studies necessary and relevant to the extent required under Wyo. Stat. Ann. § 37–15–401(a)(iv).

### 4. Unreasonable discrimination

[¶ 33] In its final argument, Qwest cites Wyo. Stat. Ann. § 37–15–404(b)[10], which prohibits the PSC from "unreasonably discriminatory or preferential treatment in its regulation of any telecommunications company." Qwest asserts that, in an earlier administrative case involving Silver Star, the PSC ruled that Silver Star did not have to file a TSLRIC Study for the Afton Exchange because it was a competitive market. Now, in the current case involving Qwest, the PSC has used contrary reasoning and reached the opposite ruling. Qwest complains that this is unreasonable discrimination.

[¶ 34] We concluded above that the PSC has statutory authority under Wyo. Stat. Ann. § 37–15–402(a) to require a TSLRIC Study for the Afton Exchange. It is not

---

8. Wyo. Stat. Ann. § 37–15–401(a) provides as follows:

    (a) In addition to the powers exercised pursuant to the provisions of W.S. 37–15–408, the commission has the power to:
    (i) Investigate the methods and practices of any telecommunications company;
    (ii) Require any telecommunications company to conform to the laws of this state and to all rules, regulations and orders of the commission not contrary to law;
    (iii) Make any rules and regulations, in accordance with the Wyoming Administrative Procedure Act, necessary for the commission to carry out its powers in this chapter, including rules objectively established and consistent with commonly accepted industry standards, where applicable standards exist;

    (iv) Require reports and studies as to prices and terms and conditions of service, necessary and relevant for the commission's exercise of its authority, including those protected as trade secret or confidential based on legitimate competitive or other operational concerns;
    (v) Hold hearings on complaints, or for good cause, upon notice and subject to the provisions of the Wyoming Administrative Procedure Act; and
    (vi) Regulate telecommunications companies only as provided for in this chapter.

9. *See supra* notes 6 & 7.

10. Wyo. Stat. Ann. § 37–15–404(b) provides that "[t]he commission shall not give unreasonably discriminatory or preferential treatment in its regulation of any telecommunications company."

unreasonably discriminatory for the PSC to require Qwest to comply with the law. *See Amoco Production Co. v. Wyoming State Bd. of Equalization*, 797 P.2d 552, 555 (Wyo. 1990) ("If, in fact, the statute was not being enforced as the legislature intended, the [agency] acted properly when it corrected that oversight.").

[¶ 35] The earlier Silver Star case is not before us for consideration. *See Amoco*, 797 P.2d at 555. ("We find little merit in Amoco's pointing to other instances where the [agency] may or may not have applied the statute as written. Our ruling today only addresses the issue of whether the statute applies to … Amoco."). Our interpretation of Wyo. Stat. Ann. § 37–15–402(a) as authorizing the PSC to require TSLRIC Studies for competitive and noncompetitive markets suggests that Silver Star, like Qwest, is subject to this statute.[11] If the PSC has not applied the statute as written to Silver Star, it has the authority to correct that oversight.

### V. Conclusion

[¶ 36] The plain language of the Act provides statutory authority for the PSC to require TSLRIC Studies for competitive markets. The PSC did not exceed its statutory authority when it ordered Qwest to prepare and submit an exchange-specific TSLRIC Study for the Afton Exchange.

[¶ 37] We affirm.

---

11.  Under Wyo. Stat. Ann. § 37–15–402(a), small telecommunications companies may not be required to submit TSLRIC Studies every three years, and may use "surrogate" TSLRIC Studies. The PSC still has authority to require small telecommunications companies to submit TSLRIC Studies pursuant to Wyo. Stat. Ann. § 37–15–401(a)(iv). In the current case, we have no basis even to speculate about Silver Star's qualifications for this exemption, or about what an appropriate surrogate might be. We merely note that there might be ways for Silver Star to comply with Wyo. Stat. Ann. § 37–15–402(a) other than by filing its own TSLRIC Study for the Afton Exchange.