DAVIS, Justice,
dissenting, in which FOX, Justice, joins.
[¶33]. I must respectfully dissent. After studying .the Wyoming Public Records Act, I am convinced that it prohibits governmental entities from charging a fee for the inspection of electronic records.
[¶34] To provide a complete picture of the situation, it is helpful to expand a bit on the undisputed facts of this case. Members of the school board historically used their own personal email accounts for school district business. At some point problems arose with this arrangement, and the district proposed to provide board members with district email accounts for district business. However, the board members did not want separate accounts, and none were set up.
[1135] As a result, when the newspaper made its request for a little over two months of board emails, the district could only be certain that it could locate those emails which might have been sent to persons with district email accounts, which would be on the server if not deleted, and then would still be there for sixty days after being deleted. It would not have been in possession of emails sent from the private account of a board member sent only to accounts of other board members.
[¶36] The district therefore had to request that each board member forward emails during the relevant period from his or her personal account to the district. In one case, a board member brought her laptop to the district office so that its information technology staff could locate the emails.
[¶37] As to the emails that were on the district’s server, the IT manager had only to develop a search string to locate the emails, although he had to refine the search and check it to make sure that it was producing the records he wanted to produce. After all of the emails were gathered from the district’s server and the board members, it was *688 a simple matter to copy them to a compact disc.
[¶38] The district has a policy which allows it to charge ten cents per page for documents and twenty cents per CD, The policy also allowed it to charge $20.00 per hour for clerical time, $30.00 per hour for professional personnel, and $40.00 per hour for managerial personnel. It advised the newspaper reporter who had sought the information by letter that it had a CD available upon payment of $110.00, which represented one hour of clerical time[3] and three hours of professional personnel time. It did not attempt to impose a per page charge, or evidently, a charge for the CD.
[¶39] The newspaper had not asked for a disc or that copies be made, and it objected to the charge the district sought to impose to locate the emails which were or should have been part of its records. If someone else asks for the same emails, the district would provide them for the cost of the compact disc.
[¶40] Now that the stage is set, I turn to case law that governs issues arising under the Wyoming Public Records Act. The intent of the Act is “to permit access to public records unless disclosure would inflict irreparable harm contrary to protected rights.” Houghton v. Franscell, 870 P.2d 1050, 1052 (Wyo. 1994) (“The object of the public records act is disclosure, not secrecy.”). This Court has observed that “we would not look to the most general meaning of those terms and phrases, but rather, would look to their meaning in the context of the statute and we would do so a fortiori in view of the liberal construction rales applicable to these statutes.” Allsop v. Cheyenne Newspapers, Inc., 2002 WY 22, ¶ 23, 39 P.3d 1092, 1099 (Wyo. 2002). We have further explained:
By a liberal interpretation, it is only meant that words should not be forced out of their natural meaning and should receive a fair and reasonable construction so as to obtain the objects for which a statute is designed.
Id, ¶ 10 n.2, 39 P.3d at 1095 n.2 (citation omitted).
[¶41] Although imposition of a fee for a member of the public to inspect public records is not the same as denying access, imposing a cost for inspection could limit the access the Act was - intended to provide. While I have no reason to question the district’s good faith, and can accept that it only wants to pass on the cost of responding to a request for electronic records, there can be no doubt that such fees could be used to discourage access.
[1Í42J The statute itself provides the answer as to whether the district could charge for inspection of the documents it retrieves for inspection or not. The majority opinion suggests that the sections dealing with electronic records and the language prohibiting charging a fee for inspection of documents are somehow divorced from each other in space and time to such an extent that the latter applies only to paper documents. However, both provisions were adopted in the same amendment in the 2002 Special and Budget Session:
16-4-202. Right of inspection; rales and regulations; unavailability.
(d) If a public record exists primarily or solely in an electronic format, the custodian of the record' shall so inform the requester. Electronic record inspection and copying shall be subject to the following:
(i) The reasonable costs of producing a copy of the public record shall be borne by the party making the request.' The costs may include the cost of producing a copy of the public record and the cost of constructing the record, including the cost of programming and computer services;
(ii) An agency shall provide an electronic record in alternative formats unless • doing so is impractical ór impossible;
(üi) An agency shall not be required to compile data, extract data or create a new document to comply with an electronic record request if doing so would impair the agency’s ability to discharge its duties;
*689 (iv) An agency shall not be required to allow inspection or copying of a record in its electronic format if doing so would jeopardize or compromise the security or integrity of the original record or of any proprietary software in which it is maintained;
16-4-204. Right of inspection; copies, printouts or photographs; fees.
(a) In all cases in which a person has the right to inspect and copy any public records he may request that he be furnished copies, printouts or photographs for a reasonable fee to be set by the official custodian. Where fees for certified copies or other copies, printouts or photographs of the record are specifically prescribed by law, the specific fees shall apply. Nothing in this section shall be construed as authorizing a fee to be charged ás a condition of making a public record available for inspection.
2002 Wyo. Sess. Laws ch. 53, § 1 (underlining in the original indicates text added by the amendment).
[¶43] It is clear from the juxtaposition of these provisions in the amendment that the legislature was quite aware of the potential complications of the language it added in § 16-4-202(d). It added provisions which would allow agencies to compile data if they were willing to so, and to allow them to charge for gathering the requested information. On the other hand, it also added the provision in § 16-4-204(a) to make it clear that nothing it had said in the amendment changed the rule that an entity could not charge for inspection of any record. The base public record—in this case the emails—must be available for free inspection.[4] If the newspaper had requested the district to prepare a report based upon the information in its database, it could have then charged for the labor required to make the compilation and the costs associated with it, if it wished to perform the task at all.[5] It could not, on the other hand, refuse inspection. The legislature could have, but did not, include authorization to charge for the reasonable costs of retrieval. See Ga. Code Ann. § 50—18—71(c)(1) (“An agency may impose a reasonable charge, for the search, retrieval, redaction, and production or copying costs for the production of records pursuant to this article.”).
[¶44] The majority concludes that the language in § 16-4-202(d) means that the legislature understood that certain kinds of record could only be made available by copying them, and so intended to allow a fee to be charged to produce a copy. The plain and contemporaneously enacted language of § 16-4-204(a) is a clear expression of legisla: tive intent to the contrary. We presume that the legislature acts with full knowledge of existing law, and that it intends new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. Nicodemus v. Lampert, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014) (citing Estate of Dahlke ex rel. Jubie v. Dahlke, 2014 WY 29, ¶¶ 36-37, 319 P.3d 116, 125-26 (Wyo. 2014); Rock v. Lankford, 2013 WY 61, ¶ 19, 301 P.3d 1075, 1080-81 (Wyo. 2013); and Redco Const. v. Profile Props., LLC, 2012 WY 24, ¶¶ 26, 37, 271 P.3d 408, 415-16, 418 (Wyo. 2012)).
[¶45] Accordingly, I can only conclude that the legislature anticipated that this Court would continue to construe the Public Records. Act to favor disclosure without imposition of fees which could burden citizens’ rights to access. It could easily have included language that made it clear that an entity could charge for inspection of electronic records, but instead it included language making it clear that no such fee could be charged, *690 without expressly limiting the language to paper records.
■ [¶46] Beyond that, to suggest that the legislature intended to allow a governmental entity to charge for moving data to a location where it can be inspected—which is in my view what happened here—is contrary to the way things worked and still work in the paper world. The earliest version of the Public Records Act was adopted in 1969, when it is safe to say that most records were probably still in paper form. 1969 Wyo. Sess. Laws ch. 146, § 1 (codified at Wyo. Stat § 9-692.1 (1967)). That earliest version of the statute provided that copies could be made at the public’s request, as does the current statute. Id, at § 4; Wyo. Stat. Ann. § 16-4-204(a).
[¶47] It is useful to compare the process by which a paper public record had to be maintained and produced for public inspection before records were kept electronically.[6] Assuming that the entity did not simply allow members of the public to search its files and provide a copy machine for them to use, someone had to find a place to store the record—probably in a labeled file folder kept in a labeled filing cabinet. Of course, an entity could simply toss documents in an unorganized pile somewhere, but it would presumably keep its records in an organized manner for its own use. If a citizen requested to see the correspondence between board members and between board members and district employees for a month or so, some person had to locate the documents in question, which would naturally be easier if the records were kept in some organized fashion. The records would probably have had to have been brought to a location where the citizen could inspect them without interfering with the entit/s ongoing activity.
[¶48] If the inspector wanted a copy of a document, someone working for the entity would have had to remove it from the folder, perhaps remove staples, copy the document, restaple it, return it to the file folder, and then return the document to the location where it was kept.[7] Operation of the copying machine would entail some expense. The process' would have to be duplicated for each person who wanted a copy of the same document.
[¶49] Understandably, the original Public Records Act provided that the entity could charge a reasonable copying fee for that effort. Wyo, Stat. § 9-692.4 (1976 Cum. Supp. to 1967 Wyoming Statutes). However, the original legislation, and the amendments that followed, did not permit the entity to charge a fee for retrieving the information, bringing it to a location where it could be inspected, and returning it to storage.
[¶50] The process to retrieve the emails in this ease can accurately be compared to the retrieval and transportation process for a paper record. The district chose to store documents on its email server and on the private email servers used by board members. It has never denied that these records fall within the scope of the Public Records Act, which defines the term “public records” to include “office files and memoranda,” which in turn is defined to include correspondence, which the emails are. Wyo. Stat. Aim. § 16-4-201(a)(vi)(B). In order to make this information available for inspection, the district had to collect data it allowed to be stored as it was, transfer it to the same electronic file, and provide a means by which someone requesting inspection could view it.
[¶51] The majority’s analysis strains the word “copy” when it considers that term to mean anything similar to what it meant in 1969. Moving the electronic data is less cumbersome than it is to collect paper documents for inspection. Electronic documents can be searched electronically, which paper files cannot, unless of course they are first scanned into an electronic format and made text searchable. It is ironic that the majority’s construction of the statutes in question allows a charge for locating and moving data in electronic form, while it would prohibit such a charge for moving information in paper form, regardless of how voluminous that *691 paper information may be. As we have observed:
Legislative intent, manifested in the plain language of the statutes, is the controlling consideration in our interpretation of them-. This intent is the vital part,' and the essence of the law. In keeping with the legislature’s intent, we endeavor to give statutes a reasonable, practical construction. We do not construe statutes in a manner producing absurd results. Put another way, when a statute is as clear as a glass slipper and fits without strain, courts should not approve an interpretation that requires a shoehorn.
In re RB, 2013 WY 15, ¶ 17, 294 P.3d 24, 29 (Wyo. 2013) (citations and quotation marks omitted). Because we have interpreted the purpose of the Public Records Act to permit access, rather than to prevent it, we should be reluctant to resort to a shoehorn to allow governmental entities to shift the cost of their statutorily mandated operations to citizens who seek to learn what the entity is' up to.
[¶52] Even if the term “copy” meant the same thing as electronically transferring information within the system, which it does not to me, that does not mean that it was necessary to transfer the data to a CD. This may have been more, convenient for the district, but there were other options. It would certainly be impractical for many reasons to allow a citizen to use an entity’s working computers to inspect electronic documents. However, no one has suggested a reason that the data sought to be inspected here could not have been transferred to a location where it could be examined at a public terminal, and it would not seem to be difficult to set up an inexpensive desktop computer to allow inspection, The terminal could be set up in such a manner as to limit access to the requested records and to prevent modification of the custodian’s records, I do not believe this would involve “copying”- as that word has- historically been used in the Act, for reasons I have already explained.[8]
[1153] The'majority’s decision will encbhr-age governmental entities to keep their electronic records in disarray, rather than properly Organizing them so that they can be inspected. In this case, much of the work to produce the emails was caused by the board members’ use of personal email addresses, where official -and perhaps sensitive information could have been commingled with personal communications.[9] It was obviously less difficult for the district- IT staff to search its servers to find official emails that fell within the relevant time period, and this process could have been simplified by issuing board members official addresses as the district planned to do at one point in time.
[¶54] As the Ohio Supreme Court observed, “No pleading of too much expense, or too much time involved, or too much interference with normal duties, can be used by the respondent to evade the public’s right to inspect and obtain a copy of the public records within a reasonable time.” State ex rel. Toledo Blade v. Seneca Cty. Bd. of Comm’rs, 120 Ohio St.3d 372, 899 N.E.2d 961, 971 (2008). The Court found that the custodian had “a duty to organize and maintain [the records] in a manner in which they can be made available for inspection and copying.” Id, We should not presume that the legislature intended to adopt a statute which would allow public records custodians to do otherwise, particularly in light of the statute’s express language.
[¶55] Finally, the majority refers to the provision of a 2014 amendment to the Public Records Act which instructs the Wyoming Department of Administration and Information (A&I) to adopt uniform rules for inspection, copies, and production of records for the use of state agencies, Wyo. Stat. Ann. § 16-4-204(e); 2014 Wyo, Sess, Laws ch. 109, § 1. *692 This statute has no direct application here, since the school district is not a state agency.[10] The applicable statute would be Wyo. Stat. Ann. § 16^4-204(e), which provides that “[a]fter July 1, 2008, any fees or charges assessed by a custodian of a public record shall first be authorized by duly enacted or adopted statute, rule, resolution, ordinance, executive order or other like authority.”[11]
[¶56] Both of these provisions just authorize A&I and local governmental entities to make rales setting the amounts and conditions when fees can properly be charged. This makes sense—there should be rules to provide for orderly inspection which will not disrupt government business, the cost and means of copying when copies are requested, etc. The majority’s conclusion that the stat ute intended to allow an entity to charge for inspection if inspection can only be accomplished by making an electronic copy, which I consider to be a mere transfer of data, finds no support in its plain language. Moreover, no administrative agency or local governmental entity can adopt regulations which exceed their statutory authority, and the 2002 amendments described above prohibit a charge for inspection. Qwest Corp. v. Public Service Comm’n of Wyoming, 2007 WY 97, ¶ 3, 161 P.3d 495, 497 (Wyo. 2007); Pedro/Aspen, Ltd. v. Board of Cnty. Comm’rs for Natrona Cnty., 2004 WY 84, ¶ 13, 94 P.3d 412, 417 (Wyo. 2004).
[¶57] I would therefore reverse the district court and find that the fee sought to be charged by the district was improper.

. The district did not charge for the clerical worker's time spent contacting board personnel to notify them that the emails were needed, but did charge for the time she spent forwarding emails to the technology department, printing paper copies that were later shredded, and searching her own computer for relevant emails.

. The Act has always required that "[a]U public records shall be open for inspection by any person at reasonable times, except as provided in this act or as otherwise provided by law....” 1969 Wyo. Sess. Laws ch. 145, § 2; see also Wyo. Stat. Ann. § 16-4-202(a) (LexisNexis 2015).

. The district has a policy which indicates that it will not compile data, extract data, or create a new document to comply with a record request, as doing so would impair its ability to discharge its duties. It is expressly allowed by statute to decline to do the things listed in the policy by § 16—4—202 (d) (iii). By virtue of the fact that the district did not invoke this policy, one can safely conclude that it considered the emails existing public records, and not a compilation, etc. Whether a custodian can simply declare prospectively that it will always be too busy to provide any data compilations is a question for another case and another day.

. The record tells us nothing about tire extent to which public records are still kept in paper form, and tire process would be the same as described to the extent they are.

. An entity might be understandably reluctant to allow a member of the public to disassemble, reassemble, and refile its paper files to copy them.

, The newspaper points out that in this day and age, users may not request either electronic or printed copies of records—they may simply photograph them using a stand-alone digital camera or a smartphone camera if they only require the information contained in the electronic document. Whether a custodian could prevent that to recover a copy charge is not an issue in this case.

. We have no idea whether this occurred or not, because the emails are not of record, as the newspaper refused to pay for the disc the district made.

. See Wyo. Stat. Ann. § 1—39—103(a)(ii) and (vi) (LexisNexis 2015), defining the terms "local government,” "state,” and "state agency.”

. As already noted, the district did adopt rules as required by this section.