2004 WY 150

**PINNACLE BANK, a National Banking Corporation, Appellant (Defendant),**

v.

**Rosemary L. VILLA, Appellee (Plaintiff).**

**No. 03–234.**

Supreme Court of Wyoming.

Nov. 30, 2004.

Representing Appellant: Patrick T. Holscher of Schwartz, Bon, Walker & Studer, LLC, Casper, WY. Argument by Mr. Holscher.

Representing Appellee: Bradley D. Bonner and Laurence W. Stinson of Bonner Stinson PC, Powell, WY. Argument by Mr. Bonner.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1]   This case comes before this court as two certified questions from the District Court, Fifth Judicial District, State of Wyoming.  We are asked to consider whether a city ordinance addressing the removal of snow and ice establishes the applicable duty of care or whether Wyoming's common law regarding the natural accumulation of snow and ice applies.  We are additionally asked to consider whether the State of Wyoming is to be included in the comparative fault analysis even though the State is immune from suit in these circumstances.

### ISSUES

[¶ 2]   The certified questions are:

1.   Is the following finding of the district court correct?

The City of Worland municipal ordinance establishes the duty of [Appellant Pinnacle] Bank under the circumstances of this case and it is the Court's intention to instruct the jury as to the standard of care pursuant to the City of Worland municipal ordinance, and not on the common law rules pertaining to natural accumulation of snow and ice.  The Court finds that the city ordinance, which is a specifically enacted rule, controls over the general common law rules pertaining to natural accumulation.

2.   Whether the Defendant is not entitled to compare the fault of the State of Wyoming for the purposes of W.S. § 1–1–109 because the State is, pursuant to the Wyoming Governmental Claims Act, absolutely immune from recovery under these circumstances.

### FACTS

[¶ 3]   The district court's certification order sets forth a brief statement of facts relevant to the certified questions.

1.   . . . Villa fell on the sidewalk in front of Pinnacle Bank on November 10, 1998.  [Villa's] fall was caused by an accumulation of ice in front of the Pinnacle Bank Building.  [Villa] contends that the ice was formed by improper drainage off the fa-

cade of the building. [Pinnacle Bank] contends that the ice formed as a natural accumulation of frozen water.

2. The City of Worland has a municipal ordinance governing sidewalks such as the one upon which [Villa] fell which reads as follows:

> It shall be the duty of the occupant of any premises within the city limits or, in case the same are unoccupied, then the owner or his agent to keep the sidewalks in front of and adjoining his premises safe and clear for pedestrians and to repair the same from time to time. Such occupant, owner or agent shall, with all reasonable dispatch, remove snow, ice, slush, mud or other impediment to safe and convenient foot travel. Every person failing to comply with the provisions of this section shall be deemed guilty of committing a nuisance and, upon conviction thereof, shall be fined.

3. ... [Pinnacle] Bank owns the sidewalk.

Additionally, Pinnacle Bank claimed that the State negligently designed and constructed the sidewalk as part of a project on a state highway easement.

[¶ 4] When making its ruling encompassed in the certified question, the district court noted that the reasoning for its ruling was more thoroughly set forth in its Order on Motions In Limine and Legal Trial Issues. That order stated:

> 3. The Court has been called upon to determine the governing standard under Wyoming law for [Pinnacle Bank's] duty to remove accumulations of snow, ice and the like. [Villa] asserts that a City of Worland ordinance concerning removal establishes [Pinnacle Bank's] duty, and that the common law rules pertaining to natural and unnatural accumulations of snow and ice do not therefore apply. [Pinnacle Bank] argues the opposite, that the rules of natural and unnatural accumulation control and the City of Worland ordinance has no role in establishing [Pinnacle Bank's] duty here. Looking at the history of cases determined by the Wyoming Supreme Court which discuss similar city ordinances, and

the history of cases on the natural accumulation rule, the Court determines in this matter that the City of Worland ordinance does in fact impose a duty upon [Pinnacle Bank], and it would appear that it should be a question for the jury to make a determination as to whether [Pinnacle Bank] did in fact remove the hazard with all the reasonable dispatch as required by the ordinance. The Court rules that the ordinance does in fact set the standard of care, and the jury will not be instructed on the natural and unnatural accumulation rules.

> Additionally, for the same reasons the jury will not be instructed on natural and unnatural accumulation, the jury will not be instructed on the "open-and-obvious-danger" rule. Like the natural accumulation rule, the purpose of the open-and-obvious-danger rule is to determine a party's duty of care to warn of or remove a hazard under a certain circumstance. Here, however, that duty already is established by the City of Worland ordinance. Accordingly, the only role for the open-and-obvious-danger rule in this case will be for purposes of arguing comparative fault of [Villa].

## STANDARD OF REVIEW

[¶ 5] We review certified questions pursuant to W.R.A.P. 11. Under this rule, we are asked to settle questions of law in which it appears there is no controlling precedent from this court. W.R.A.P. 11.01. "[Q]uestions of the application of the law, including identification of the correct rule, are considered de novo." *EOG Resources, Inc. v. State*, 2003 WY 34, ¶ 7, 64 P.3d 757, ¶ 7 (Wyo.2003).

## DISCUSSION

[¶ 6] Pinnacle Bank initially argues that pursuant to *Distad v. Cubin*, 633 P.2d 167 (Wyo.1981), this court must apply Wyoming's established common law regarding natural accumulation of snow and ice and disregard the standard set forth in the ordinance. In explaining the state of the common law, we have stated:

In Wyoming, the owner or occupier of premises is not liable for injuries resulting from a slip and fall on a natural accumulation of snow and ice. *Eiselein v. K–Mart, Inc.,* 868 P.2d 893, 897 (Wyo.1994). Further, we have held that there is no liability when the dangers surrounding such natural accumulation are obvious or are as well known to the plaintiff as the defendant. *Sherman v. Platte County,* 642 P.2d 787, 789 (Wyo.1982). Liability attaches only if the owner or occupier creates an unnatural accumulation that is substantially different in volume or course than would naturally occur. *Eiselein,* 868 P.2d at 898. To prove that an accumulation of snow and ice is unnatural, a plaintiff must show that the defendant created or aggravated the hazard, that the defendant knew or should have known of the hazard, and that the hazardous condition was substantially more dangerous than it would have been in its natural state. *Myers v. Forest City Ent., Inc.,* 92 Ohio App.3d 351, 635 N.E.2d 1268, 1269 (1993).

*Pullman v. Outzen,* 924 P.2d 416, 418 (Wyo.1996). We have also stated:

> Liability will only attach if the owner or occupier creates an unnatural accumulation that is substantially different in volume or course than would naturally occur. *Pullman,* 924 P.2d at 418; *Eiselein,* 868 P.2d at 898. To establish that an accumulation of snow and ice is unnatural, a plaintiff must show that the defendant created or aggravated the hazard, that the defendant knew or should have known of the hazard, and that the hazardous condition was substantially more dangerous than it would have been in its natural state. *Pullman,* at 418. Furthermore, no duty exists which requires either the removal of an obvious danger or a warning of its existence. *Eiselein,* at 895. In *Sherman v. Platte County,* [642 P.2d 787 (Wyo.1982),] we stated
>
> > there is the rule that no duty exists which requires either the removal of an obvious danger or a warning of its existence. Second is the rule that no duty exists to remove the natural accumulation of snow and ice. The latter rule broadens the protection accorded pos-

sessors of land under the former rule. It covers that class of cases where the ice and snow naturally accumulate in a fashion where there is a lurking danger, i.e., the ice is covered by the snow.

> 642 P.2d at 789. We have also stated that even the most ably constructed and carefully maintained parking lot will probably contain minor indentations in which naturally occurring water can accumulate and freeze; naturally occurring water which naturally concentrates in such a lot is still considered a natural accumulation. *Eiselein,* 868 P.2d at 898.

*Paulson v. Andicoechea,* 926 P.2d 955, 957–58 (Wyo.1996).

[¶ 7] Nevertheless, in as early as 1963, this court suggested that the existence of an ordinance requiring a different standard of care for the removal of snow and ice might override Wyoming's natural accumulation of snow and ice common law. *Watts v. Holmes,* 386 P.2d 718 (Wyo.1963). One year later, this court again implied in *Kalman v. Western Union Telegraph Co.,* 390 P.2d 724, 727 (Wyo.1964), that a city ordinance calling for the maintenance of every city sidewalk so as to be clean and free from snow, ice, and slush established a duty that the owner use reasonable care to keep a sidewalk free from snow and ice. Thus, this court again indicated that an applicable city ordinance might increase the responsibility of a property owner above and beyond that established by the common law. Still later in *Johnson v. Hawkins,* 622 P.2d 941, 943 (Wyo.1981), upon reviewing the history of Wyoming's slip-and-fall-on-ice-and-snow cases, this court announced:

> In our judgment, the most accurate interpretation of the Wyoming cases discussed above involving slips on icy sidewalks is that a storekeeper, ***in the absence of an ordinance,*** is not under a duty to remove natural and obvious accumulations of snow and ice from the public sidewalk outside his business.

(Emphasis added.)

[¶ 8] However, in *Kalman* this court reasoned that the violation of any such ordinance might be used as evidence of the land-

owner's negligence, but it would not establish the landowner's negligence per se. *Kalman,* 390 P.2d at 727. In *Distad,* at 179, quoting *Eisenhuth v. Moneyhon,* 161 Ohio St. 367, 119 N.E.2d 440, 444 (1954), we recognized the proposition that when a conglomeration of circumstances are relied on in order to find the statutory or regulatory violation, use of the negligence per se doctrine is not desirable.

[I]f a positive and definite standard of care has been established by legislative enactment [administrative regulation] whereby a jury may determine whether there has been a violation thereof by finding a single issue of fact, a violation is negligence per se; but where the jury must determine the negligence or lack of negligence of a party charged with the violation of a rule of conduct fixed by legislative enactment from a consideration and evaluation of multiple facts and circumstances by the process of applying, as the standard of care, the conduct of a reasonably prudent person, negligence per se is not involved.

[¶ 9] In *Distad,* this court was faced with reviewing various standards of care set forth by statute, ordinance, and administrative regulation and how they might affect the applicable duty of care in a medical malpractice action. Ultimately, this court held that the effect of a violation of statute, ordinance, or regulation which defines a standard of conduct in negligence actions would be resolved under the Restatement of Torts (Second). *Distad,* at 175. Thus, we concluded that the district court had properly instructed the jury that the unexcused violation of state and federal laws defining the standard of conduct of a reasonable man may be relevant evidence bearing on the issue of negligent conduct because such a holding was consistent with the Restatement of Torts (Second) § 288B(2). *Distad,* at 176.

[¶ 10] In the instant case, the city ordinance in effect specifies that it is the affirmative duty of an occupant, owner, or agent of property within the city limits of Worland, Wyoming to keep the sidewalks in front of and adjoining the premises safe and clear for pedestrians and to repair the same from time to time. This duty explicitly includes the responsibility to remove snow, ice, slush, mud, or other impediment with all reasonable dispatch to assure safe and convenient foot travel. The ordinance obviously broadens the responsibilities enumerated beyond that prescribed by the common law. We further conclude that even though the ordinance does not specifically repeal the established common law in the area, the ordinance cannot be construed as consistent with the common law. This fact evidences the Worland city council's clear intent under its delegated authority to establish a heightened standard of care within the city limits. Accordingly, the municipal ordinance provides the applicable standard of care.

[¶ 11] Pinnacle Bank additionally argues that under *Distad* and its apparent adoption of the Restatement of Torts (Second) § 288(d), this court may refuse to adopt the ordinance's defined standard of care. The Restatement of Torts (Second) § 288(d) provides:

The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively

. . .

(d) to protect a class of persons other than the one whose interests are invaded[.]

However, § 288(d) makes it clear that such an option by a court exists only where the enactment is intended to protect a class of persons other than the one whose interests were invaded. Upon considering the intent of the ordinance, it is undeniable that the ordinance was enacted in an effort to protect pedestrians and assure safe and convenient foot travel within the City of Worland. Villa obviously falls squarely within the intended protected class.

[¶ 12] Pinnacle Bank also asserts that if this court decides to apply the standard expressed by the ordinance, we should do so in conjunction with Wyoming's natural accumulation of snow and ice common law. A review of the arguments proffered by the parties on this matter actually discloses that both are in agreement in this area. Pinnacle

Bank asserts that the open-and-obvious-danger rule must still be applied in order to determine Villa's comparative negligence. Similarly, Villa contends that the open-and-obvious-danger rule should be utilized for comparative negligence purposes, but not for establishing the duty of care. Additionally, we note that the district court apparently reached this same conclusion when it ruled that the only role for the open-and-obvious-danger rule in this case would be for the purpose of arguing Villa's comparative fault. Under established Wyoming law, we agree with the parties' positions and the district court's ruling.

■ [¶ 13] The city ordinance creates an affirmative duty for an owner, occupant, or agent of property within the city limits to remove snow, ice, slush, or other impediment with all reasonable dispatch. Such an established affirmative duty negates the necessity for a determination of 1) whether the accumulation of snow and ice was natural or unnatural, 2) whether the defendant created or aggravated the hazard, 3) whether the defendant knew or should have known of the hazard, or 4) whether the hazardous condition is substantially more dangerous than it would have been in its natural state under our established common law. Rather, the determination that needs to be made by a jury in determining whether Pinnacle Bank was at fault is whether the snow, ice, slush, or other impediment was removed with all reasonable dispatch so as to assure safe and convenient foot travel as set forth by the ordinance. Thereafter, the jury must assess Villa and the State's comparative fault.

■ [¶ 14] In determining whether Villa was at fault, the jury must consider if Villa kept a proper lookout and apply the open-and-obvious-danger rule. Although the ordinance has created a heightened standard of care, a pedestrian cannot act recklessly merely because ice, snow, slush, or other impediment has not been properly removed. A pedestrian's duty to remain observant and careful continues to exist. To hold otherwise, this court would relieve parties who slip and fall on snow, ice, slush, or other impediment located on sidewalks within the Worland city limits of their duty to also act in a reasonable manner.

[¶ 15] Accordingly, consistent with the above-cited authorities, we hold that the district court properly ruled that the jury be instructed as to the standard of care set forth by the municipal ordinance. Because trial of this case now appears inevitable under our defined guidelines, we note that the jury will be required to carefully consider and evaluate multiple facts, circumstances, and factors in order to apply the standard of care expressed by the ordinance and to assess any possible comparative fault issues. This leads us to our discussion of the second certified question.

■ [¶ 16] The second certified question essentially asks us to determine whether the jury can consider and compare the fault of the State of Wyoming, even though the State is immune from recovery under these circumstances, i.e., whether the State can appear on the verdict form. Pinnacle Bank requested that the State be included because it claimed the State negligently designed and constructed the sidewalk. At oral argument, Villa actually concluded that the State can be included on the verdict form and conceded this point. We agree with Villa's conclusion under the comparative fault statute. The relevant portions of Wyo. Stat. Ann. § 1-1-109 (LexisNexis 2003) addressing comparative fault state:

(a) As used in this section:

(i) "Actor" means a person or other entity, including the claimant, whose fault is determined to be a proximate cause of the death, injury or damage, whether or not the actor is a party to the litigation;

. . .

(iv) "Fault" includes acts or omissions, determined to be a proximate cause of death or injury to person or property, that are in any measure negligent, or that subject an actor to strict tort or strict products liability, and includes breach of warranty, assumption of risk and misuse or alteration of a product;

. . .

(b) Contributory fault shall not bar a recovery in an action by any claimant or the

claimant's legal representative to recover damages for wrongful death or injury to person or property, if the contributory fault of the claimant is not more than fifty percent (50%) of the total fault of all actors. Any damages allowed shall be diminished in proportion to the amount of fault attributed to the claimant.

(c) Whether or not the claimant is free of fault, the court shall:

    (i) If a jury trial:

        (A) Direct the jury to determine the total amount of damages sustained by the claimant without regard to the percentage of fault attributed to the claimant, and the percentage of fault attributable to each actor; and

        (B) Inform the jury of the consequences of its determination of the percentage of fault.

    (ii) If a trial before the court without jury, make special findings of fact, determining the total amount of damages sustained by the claimant without regard to the percentage of fault attributed to the claimant, and the percentage of fault attributable to each actor.

(d) The court shall reduce the amount of damages determined under subsection (c) of this section in proportion to the percentage of fault attributed to the claimant and enter judgment against each defendant in the amount determined under subsection (e) of this section.

(e) Each defendant is liable only to the extent of that defendant's proportion of the total fault determined under paragraph (c)(i) or (ii) of this section.

As can be seen by the plain language of this statute, the Wyoming legislature has decided that the jury must determine the percentage of fault attributable to each "actor." § 1–1–109(c)(i)(A). This required determination facilitates the legislature's objective to hold each defendant liable only for his proportion of fault. § 1–1–109(e). The question then becomes whether the State fits the definition of actor.

[¶ 17] The definition of "actor" includes an entity whose fault is determined to be the proximate cause of the injury whether or not a party to the litigation. The State, although immune from suit, certainly may be the proximate cause of the death, injury, or damages and clearly fits that portion of the definition. However, because the definition of actor contains the word "fault," we must also consider that definition. As defined, "fault" includes an act or omission determined to be the proximate cause of the injury that is in any manner negligent or that subjects the actor to some sort of strict liability. § 1–1–109(a)(iv). While the State is not here subject to strict liability, it can act in a negligent manner by failing to use reasonable care. We therefore conclude that the State can be at "fault" and, therefore, fits the definition of "actor."

■ [¶ 18] Furthermore, considering the intent of the comparative fault scheme, it is apparent that the State should be included. As noted, it is clear that each defendant is liable only for the percentage of fault attributed to him. Should an "actor" not be included because it is immune, the defendants and other actors are apportioned a share of that "actor's" fault. Indeed, "immunity" does not mean that a party is not at fault; it simply means that the party cannot be sued. Allocating a portion of an immune party's fault to other "actors" thwarts the intent of the comparative fault scheme. Additionally, it is well established that, under Wyoming's comparative fault scheme, a jury is entitled to apportion the fault of *all* those whose acts proximately caused injury to the claimant, parties and nonparties alike. *Smyth v. Kaufman*, 2003 WY 52, ¶ 24, 67 P.3d 1161, ¶ 24 (Wyo.2003) (emphasis added). Indeed, because the legislature includes both parties and non-parties in the definition of "actor," it is clear that some parties may be apportioned fault but may not actually be liable to the plaintiff.

■ [¶ 19] For these reasons, we conclude that the State, even though immune, can be included in the jury's comparative fault analysis. Of course, when placing a party on the verdict form, it must be remembered that it is inappropriate for the judge to give an instruction that is not sustained by the evidence. *Anderson Highway Signs and Supply, Inc. v. Close*, 6 P.3d 123, 126 (Wyo.

2000). Accordingly, there must be at least some competent proof that the non-party actors were at fault before they are placed on the verdict form. Should this qualification be met, the defendants will be entitled to argue the State's comparative fault.

### CONCLUSION

[¶ 20] The district court's finding that the ordinance established Pinnacle Bank's duty under the circumstances of this case was correct. The ruling of the district court that the city ordinance, which is a specifically enacted rule, controls over the general common law rules pertaining to natural accumulation of snow and ice is affirmed. Moreover, the negligence per se doctrine shall not be used by the jury when making its determination of negligence with respect to Pinnacle Bank. If Pinnacle Bank is found to be negligent, the open-and-obvious-danger rule shall be applied in assessing whether Villa was comparatively negligent. We also determine that the jury may compare the fault of the State of Wyoming even though the State is immune in these circumstances.