2011 WY 125

Paul BAESSLER, as personal representative for the Estate of Carol Ann Munkberg, Deceased; and Karen R. Schmid, as personal representative for the Estate of John Allan Munkberg, Deceased, Appellants (Plaintiffs),

v.

Doug FREIER and Denny Freier, husband and wife, individually and d/b/a Stockman's Bar and the Smokehouse Saloon, Wyoming Partnerships in Fact, Appellees (Defendants).

No. S–10–0212.

Supreme Court of Wyoming.

Aug. 26, 2011.

Representing Appellants: Larry B. Jones and William L. Simpson of Simpson, Kepler & Edwards, LLC, The Cody, Wyoming division of Burg Simpson Eldredge Hersh and Jardine, P.C., Cody, Wyoming; and Patrick J. Crank of Nicholas & Crank, PC, Cheyenne, Wyoming. Argument by Mr. Jones.

Representing Appellees: Ryan P. Healy of Healy Law Firm, Sheridan, Wyoming.

Representing Wyoming Attorney General in his official capacity: Jay Jerde, Deputy Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, J., delivers the opinion of the Court; KITE, C.J., files a dissenting opinion in which HILL, J., joins.*

VOIGT, Justice.

[¶ 1] The district court dismissed the appellants' civil action against the appellees for failure to state a claim upon which relief can be granted. The dismissal and this appeal raise issues of statutory construction and the constitutionality of a statute, with the focal question being the liability of a provider of alcohol for damages caused to a third person by the person to whom alcohol was provided.[1] We affirm.

## ISSUES

[¶ 2] 1. Does the word "legally" in Wyo. Stat. Ann. § 12–8–301(a) (LexisNexis 2011) encompass legal enactments beyond Title 12 of the Wyoming Statutes such as the municipal ordinances at issue in this case?

2. If Wyo. Stat. Ann. § 12–8–301(a) prohibits liability under municipal ordinances, is the statute unconstitutional as violative of the equal protection provisions of the United States Constitution and the Wyoming Constitution?

3. If Wyo. Stat. Ann. § 12–8–301(a) prohibits liability under municipal ordinances, is

the statute unconstitutional as violative of the special law provisions of article 3, section 27 of the Wyoming Constitution?

## WYO. STAT. ANN. § 12–8–301

[¶ 3] § 12–8–301. Limitation of liability.

(a) No person who has legally provided alcoholic liquor or malt beverage to any other person is liable for damages caused by the intoxication of the other person.

(b) This section does not affect the liability of the intoxicated person for damages.

(c) This section does not affect the liability of the licensee or person if the alcoholic liquor or malt beverage was sold or provided in violation of title 12 of the Wyoming statutes.

(d) For purposes of this section "licensee" is as defined in W.S. 12–1–101(a)(viii) and includes the licensee's employee or employees.

## FACTS [2]

[¶ 4] The appellants are the personal representatives of the estates of a husband and wife, Allan and Carol Ann Munkberg, who were killed in a motor vehicle accident caused by Randall LaBrie, who also died in the accident. Prior to the accident, LaBrie became intoxicated as a result of consuming alcoholic beverages at the Stockman's Bar in Basin, Wyoming, and the Smokehouse Saloon in Greybull, Wyoming, both of which establishments are owned by the individually named appellees. LaBrie's conduct at both establishments showed that he was highly intoxicated, and such conduct was obvious and noticeable to anyone in his presence. Nevertheless, the appellees' employees at both establishments continued to serve alcoholic beverages to LaBrie.

[¶ 5] The appellants filed a wrongful death/negligence complaint against the appel-

---

* This case was reassigned to Justice Voigt on July 19, 2011.

1. The Attorney General of the State of Wyoming has appeared in this appeal to defend the constitutionality of the statute in question, pursuant to Wyo. Stat. Ann. § 1–37–113 (LexisNexis 2011).

2. Because this is an appeal from a dismissal for failure to state a claim upon which relief can be granted, we accept the facts alleged in the complaint as true, and view them in the light most favorable to the appellants. *Swinney v. Jones*, 2008 WY 150, ¶ 6, 199 P.3d 512, 515 (Wyo.2008).

lees, in which they also sought a judgment declaring § 12–8–301 unconstitutional if, as a matter of law, the statute provided immunity to the appellees for their tortious conduct. The appellees responded with a motion to dismiss the complaint pursuant to W.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted. After additional briefing and argument, the district court granted the motion to dismiss on the ground that this Court had already found the statute to be constitutional in *Greenwalt v. Ram Restaurant Corporation of Wyoming,* 2003 WY 77, 71 P.3d 717 (Wyo.2003). This appeal followed.

## DISCUSSION

### *Does the word "legally" in Wyo. Stat. Ann. § 12–8–301(a) (LexisNexis 2011) encompass legal enactments beyond Title 12 of the Wyoming Statutes such as the municipal ordinances at issue in this case?*

[¶ 6] As applicable to the issues now before the Court, we have described our standard for the review of a dismissal for failure to state a claim upon which relief can be granted as follows:

> Our review is *de novo,* and we employ the same standards and examine the same materials as the district court. We accept the facts alleged in the complaint as true and view them in the light most favorable to the non-moving party. Dismissal is appropriate only if it is certain on the face of the complaint that the plaintiff cannot assert any facts that create entitlement to relief.

*Swinney v. Jones,* 2008 WY 150, ¶ 6, 199 P.3d 512, 515 (Wyo.2008). Statutory construction is also a question of law that is reviewed *de novo. Sponsel v. Park County,* 2006 WY 6, ¶ 9, 126 P.3d 105, 108 (Wyo.2006).

[¶ 7] The issue of statutory construction presently before the Court is whether the limitation of liability provided in § 12–8–301(a) extends to any provider who has not violated a provision of Title 12 of the Wyoming Statutes or, to the contrary, extends to any provider who has not violated a provision of Title 12 of the Wyoming Statutes or any other provision of law that may apply to the sale or providing of alcohol. Specifically, if the appellees did not violate Title 12 in providing alcohol to LaBrie, but did violate the provisions of local ordinances, do they lose the limitation on liability provided by the statute? Stated differently, and in terms related to a negligence cause of action, is the standard of care under the phrase "legally provided" limited to adherence to the provisions of Title 12, or can the standard of care under the statutory language be determined by the existence of a municipal ordinance?

[¶ 8] While this precise question may not directly have been presented in *Greenwalt,* the opinion in that case clearly reveals our conclusion that Title 12 "covers the field" in regard to the meaning of "legally provided" in § 12–8–301(a). In the course of generally discussing the plenary nature of the police power of the legislature, we examined that body's 1985 response to *McClellan v. Tottenhoff,* 666 P.2d 408 (Wyo.1983), in which case this Court had "established a common law tort claim upon which relief could be granted against a liquor vendor and in favor of an injured third-party." *Greenwalt,* 2003 WY 77, ¶ 12, 71 P.3d at 723. First, we recognized that "regulation of all matters concerning intoxicating liquors is an area over which the legislative department is free to exercise its plenary police power." *Id.* at ¶ 19, 71 P.3d at 725. Next, we noted that the legislature's "comprehensive exercise" of those powers is "largely found" in Title 12. *Id.* at ¶ 20, 71 P.3d at 726. With this background, we concluded that

> It is within this comprehensive regulatory scheme that we find the evidence of the legislature's exercise of its plenary police power in the form of those specific sections creating the third-parties' tort claim against those liquor licensees and non-licensees who furnish intoxicating liquor to persons who become intoxicated and cause damage to those third parties.

*Id.*

[¶ 9] The post–*McClellan* 1985 legislation provided as follows:

**12–8–301. Limitation of liability.**

(a) No licensee is liable for damages caused by an intoxicated person to whom the licensee legally sold or furnished alco-

holic liquor or malt beverage unless the licensee sold or provided alcoholic liquor or malt beverages to a person who was intoxicated; and:

(i) It was reasonably apparent to the licensee that the person buying or receiving the alcoholic liquor or malt beverage was intoxicated; or

(ii) The licensee knew or reasonably should have known from the circumstances that the person buying or receiving the alcoholic liquor or malt beverages was intoxicated.

(b) No person who is not a licensee who has gratuitously and legally provided alcoholic liquor or malt beverage to any other person is liable for damages caused by the intoxication of the other person.

(c) This section does not affect the liability of the intoxicated person for damages.

(d) This section does not affect the liability of the licensee or person if the alcoholic liquor or malt beverage was sold or provided in violation of title 12 of the Wyoming statutes.

(e) For purposes of this section "licensee" is as defined in W.S. 12–1–101(a)(viii) and includes the licensee's employee or employees.

1985 Wyo. Sess. Laws, ch. 205, § 1 at 342.

[¶ 10] We will not repeat *Greenwalt's* lengthy analysis of the 1985 legislation. Suffice it to say for the purpose of our current analysis that the statute recognized two types of licensee liability: in subsection (a), liability for selling or providing alcohol to an intoxicated person under certain circumstances, and in subsection (d), liability for selling or providing alcohol in violation of Title 12. Clearly, the legislature viewed the type of liability recognized in subsection (a) as being legislative business within its police powers. As stated in *Greenwalt*, the legislation "had enacted a full and comprehensive regulatory scheme expressing the state's social policy in the problematic area of liquor provider liability." *Greenwalt*, 2003 WY 77, ¶ 25, 71 P.3d at 727.

[¶ 11] Less than a year after the close of the 1985 legislative session, however, § 12–8–301 was amended to read as it does today, and as it is set forth above. *See supra* ¶ 3. We noted in *Greenwalt* that

one readily sees significant legislative retrenchment of civil liability compared to the 1985 legislation. Importantly, in this regard a licensee which *legally* furnishes liquor to an intoxicated customer is not liable for damages caused by that customer's intoxication. § 12–8–301(a). However, the civil liability of a licensee or non-licensee person who sells or provides liquor in violation of Title 12 of the Wyoming statutes remains intact. § 12–8–301(c).

*Id.* at ¶ 27, 71 P.3d at 727. We then went on to list the various ways in which a licensee or non-licensee could be exposed to civil liability by violating various provisions of Title 12.[3] Our conclusion was that "the legislative product remained a full and comprehensive regulatory scheme expressing the State's social policy in this most complex area of damages caused by intoxicated members of our society." *Id.* at ¶ 32, 71 P.3d at 728. We still hold to that belief and we again conclude that the word "legally" in § 12–8–301(a) was intended by the legislature to mean only the law related to selling or providing alcohol set forth in Title 12.

[¶ 12] We will rely upon *Greenwalt* for iteration of one additional consideration in regard to this issue. The argument has been made that it would be better social policy to have the duty of monitoring alcohol consumption fall upon the provider, than to place the general public at risk due to the lack of such duty. In *Greenwalt*, we said the following in regard to that argument:

Answering the Greenwalts' argument that the legislature would have been better advised to place on the alcohol provider (vendor, bartender, wait staff, liquor store

---

**3.** Examples include a non-licensee who furnishes alcohol to an underage person (§ 12–6–101(a)), a licensee who furnishes alcohol to a minor after having received notice that the person is a minor (§ 12–5–502), a licensee who furnishes alcohol to a "habitual drunkard" after having received notice that the person is a habitual drunkard (§ 12–5–502), and a licensee who furnishes alcohol to a minor or to an intoxicated person in the drive-in area (§ 12–5–301(a)(v)). *See Greenwalt*, 2003 WY 77, ¶ 29, 71 P.3d at 727–28.

clerks, and social hosts of every kind) the duty to monitor the drinking citizen's consumption, the [appellees and the state] respond that, yes, the legislature could have drawn the line differently than it did, but sound reasons exist why it chose not to. *Id.* at ¶ 58, 71 P.3d at 737. The point is that the legislature, a policy-making branch of government, chose not to place that duty upon the alcohol provider. Where the legislature has, in effect, preempted the field as to a statewide social issue, it is not the province of municipalities to enact contrary laws. *Green River v. Debernardi Constr. Co.,* 816 P.2d 1287, 1290–91 (Wyo.1991); *see also Laramie Citizens for Good Government v. City of Laramie,* 617 P.2d 474, 482–83 (Wyo.1980).[4] "[T]he decision to impose liability, and under what circumstances, upon the suppliers of alcohol for the torts of their intoxicated patrons or guests is a matter of public policy which the legislature is best equipped to handle." *Bland v. Scott,* 279 Kan. 962, 112 P.3d 941, 949 (2005). Consequently, whereas municipalities may to some extent police the sale and consumption of alcoholic beverages at the local level, they may not by ordinance establish a negligence standard of care different from that chosen by the legislature.

*If Wyo. Stat. Ann. § 12–8–301(a) prohibits liability under municipal ordinances, is the statute unconstitutional as violative of the equal protection provisions of the United States Constitution and the Wyoming Constitution?*

 [¶ 13] When the constitutionality of a statute is challenged, we apply the following standard of review:

"Issues of constitutionality present questions of law. We review questions of law under a *de novo* standard of review and afford no deference to the district court's determinations on the issues. *Anderson v. Bommer,* 926 P.2d 959, 961 (Wyo.1996). In reviewing a constitutionally based challenge to a statute, we presume the statute

to be constitutional and any doubt in the matter must be resolved in favor of the statute's constitutionality. *Thomson v. Wyoming In–Stream Flow Committee,* 651 P.2d 778, 789–90 (Wyo.1982). [Appellant] bears the burden of proving the statute is unconstitutional. *Pfeil v. Amax Coal West, Inc.,* 908 P.2d 956, 961 (Wyo.1995)."

*Reiter v. State,* 2001 WY 116, ¶ 7, 36 P.3d 586, 589 (Wyo.2001) (*quoting V–1 Oil Co. v. State,* 934 P.2d 740, 742 (Wyo.1997)). The appellant's burden of proof is heavy, and it includes the obligation to show both that he has a constitutionally protected interest and that it has been infringed in an impermissible way.

*Fraternal Order of Eagles Sheridan Aerie No. 186, Inc. v. State,* 2006 WY 4, ¶ 47, 126 P.3d 847, 863 (Wyo.2006) (some internal citations omitted).

 [¶ 14] There is little to be gained by a repetition here of all that we said in *Greenwalt* in regard to this issue. *See Greenwalt,* 2003 WY 77, ¶¶ 38–66, 71 P.3d at 729–39. The doctrine of *stare decisis* requires us to accept the principal underlying rationale of our determination in that case that § 12–8–301 does not violate the equal protection provisions of the state and federal constitutions. *Stare decisis* is "the doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation." *Alpine Lumber Co. v. Capital West Nat'l Bank,* 2010 WY 62, ¶ 12, 231 P.3d 869, 872 (Wyo.2010) (quoting *Black's Law Dictionary* 1537 (9th ed. 2009)). Adherence to precedent "furthers the even-handed, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Goodrich v. Stobbe,* 908 P.2d 416, 420 (Wyo.1995) (citation and internal quotation marks omitted). And, of significance in this case, "*stare decisis* in respect to statutory interpretation has 'special force' . . . ." *Alpine Lumber,* 2010 WY

---

4. Contrast *Pinnacle Bank v. Villa,* 2004 WY 150, 100 P.3d 1287 (Wyo.2004), where we allowed that a municipal ordinance may establish a duty of care where there is no such duty at common law. *Id.* at ¶ 7, 100 P.3d at 1290. That situation is distinguishable from the situation at hand, where the municipal ordinances would establish a duty contrary to that established by statutory law.

62, ¶ 12, 231 P.3d at 873 (quoting *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 139, 128 S.Ct. 750, 756, 169 L.Ed.2d 591 (2008)).

[¶ 15] The underlying rationale of *Greenwalt*'s equal protection analysis is this: it is the legislature's prerogative to determine, as a matter of public policy, that the risk of injury to third persons as a result of someone's alcohol consumption is better placed upon the consumer of that alcohol than upon its provider. 2003 WY 77, ¶¶ 63–64, 71 P.3d at 738–39. We said in *Greenwalt* that "the legislature has defined the duty/breach of duty elements [of a negligence claim] in terms of the liquor providers' violations of the regulatory provisions of Title 12." *Id.* at ¶ 56, 71 P.3d at 737. In other words, we have already determined that this legislative line-drawing that results in injured third parties being able to recover from the alcohol consumer who injured them, but not the person who provided the alcohol to that consumer, does not violate the concept of equal protection of the laws. In their appellate brief, the appellants place great reliance upon the dissenting opinion in *Greenwalt,* but that dissenting opinion, obviously, is not the law of the State. Because we also recognized and accepted in *Greenwalt* that the legislature had allowed for liability on the part of the provider under certain circumstances, with those circumstances being limited to those set forth in Title 12, we do not believe that addition of the municipal ordinance argument in the instant case changes the result. *Id.* In the pervasive regulatory scheme established in Title 12, the legislature established not only the regulations, but the consequences for their violation. The legislature's 1986 amendment of the 1985 legislation to remove the liability of providers to injured third parties except where a provision of Title 12 had been violated was a clear rejection of the appellees' present argument.

### If Wyo. Stat. Ann. § 12–8–301(a) prohibits liability under municipal ordinances, is the statute unconstitutional as violative of the special law provisions of article 3, section 27 of the Wyoming Constitution?

[¶ 16] The appellants contend that § 12–8–301(a) violates article 3, section 27 of the Wyoming Constitution, which prohibits "special laws" that, *inter alia,* limit civil actions, or that grant "to any corporation, association or individual ... any special ... immunity...." A special law is a "law that pertains to and affects a particular case, person, place, or thing, as opposed to the general public." *Black's Law Dictionary* 963 (9th ed. 2009). In more detail, a special law has been described as follows:

> Ordinarily, a statute is regarded as a "special law" if it does not have a uniform operation. A law is "special" if it operates upon and affects only a fraction of the persons or a portion of the property encompassed by a classification, granting privileges to some while denying them to others. Special legislation relates either to particular persons, places, or things, or to persons, places or things which, though not particularized, are separated by any method of selection from the whole class to which the law might, but for such legislation, be applied. Classifications for the purpose of legislation, under a state constitution's prohibition against special legislation, must be real and not illusive, and they cannot be based on distinctions without a substantial difference.

73 Am.Jur.2d *Statutes* § 4 (2001). By contrast, a "general law" is a law that meets the following description:

> General laws are those operating uniformly throughout a state, which prescribe a rule of conduct upon citizens generally, and which operate with general uniform application throughout the state under the same circumstances and conditions. A law uniformly applying to a class of persons or things having a reasonable and just relationship to the regulated subject matter is a general law. Thus, for example, where a legislative method of providing aid has an equal impact on all members of a rationally defined class similarly situated, the law is a general law.
>
> . . . .
>
> Some state constitutions require that laws of a general nature must have uniform operation. General laws operate uni-

formly, not because they operate on every person in the state, but because every person brought under the law is affected by it in uniform fashion, and a legislature may exclude certain persons or things from the application of a general law. A general law does not lose its general law status so long as it operates uniformly upon subjects as they may exist in the state, applies uniformly within permissible classifications, and operates universally throughout the state or so long as it relates to state function or instrumentality. However, a general law operates as an unreasonable classification, in violation of a uniformity clause, when it seeks to create artificial distinctions where no real distinction exists.

*Id.* at § 3.

[¶ 17] With relative consistency, this Court has for years treated article 3, section 27 as an equal protection provision, and we have interpreted it in conjunction with article 1, section 34, which proclaims that "[a]ll laws of a general nature shall have a uniform operation." *See, e.g., Krenning v. Heart Mountain Irrigation Dist.,* 2009 WY 11, ¶ 33 n.4, 200 P.3d 774, 784 n.4 (Wyo. 2009); *Bd. of County Comm'rs v. Geringer,* 941 P.2d 742, 746 (Wyo.1997); *Mills v. Reynolds,* 837 P.2d 48, 52–53 (Wyo.1992); *White v. State,* 784 P.2d 1313, 1316 (Wyo. 1989); *Hoem v. State,* 756 P.2d 780, 781–82 (Wyo.1988); and *Phillips v. ABC Builders, Inc.,* 611 P.2d 821, 826 (Wyo.1980). The appellants in the instant case have followed that lead, providing a special law argument that simply mirrors their equal protection argument. That argument, in essence, is that § 12–8–301 creates two unlawful classifications that are not rationally related to the purpose of the legislation: (1) vendors who are not liable for injuries caused by patrons served inside an establishment vs. vendors who are liable for injuries caused by patrons served in a drive-in area; and (2) third parties who may not recover from vendors who sold to patrons served inside an establishment vs. third parties who may recover from vendors who sold to patrons served in a drive-in area.

[¶ 18] To some extent, this issue was decided against the appellants by our decision in *Greenwalt,* where we considered the Greenwalts' argument to be based in part on the constitutional prohibition of special legislation. *Greenwalt,* 2003 WY 77, ¶ 6, 71 P.3d at 717. Beyond that, however, is our perception that § 12–8–301 simply is not a special law when viewed under the definitions set forth above. The statute has general application across the State, applies to all liquor vendors, and applies to all liquor vendors in the exact same fashion. The legislature has chosen to set forth the liquor industry regulatory scheme in Title 12 of the statutes, and has made liquor vendors liable for damages to third parties injured by patrons who obtained alcoholic beverages from vendors in violation of Title 12 provisions. The fact that the legislature chose not to incorporate into the law vendor liability based upon common law negligence, or upon laws lying outside of Title 12, does not render the section a special law. Recovery against vendors is a legislative creation, subject to legitimate limitations placed thereon. *Stevens v. Lou's Lemon Tree, Ltd.,* 187 Ill. App.3d 458, 465, 135 Ill.Dec. 58, 543 N.E.2d 293, 298 (Ill.App.Ct.1989), *appeal denied,* 128 Ill.2d 672, 139 Ill.Dec. 522, 548 N.E.2d 1078 (Ill.1989).

[¶ 19] Not every immunity granted to an industry or practice violates article 3, section 27 of the Wyoming Constitution. For instance, in *Krenning* we recognized that the legislature could have a legitimate legislative purpose in granting governmental immunity to an irrigation district. *Krenning,* 2009 WY 11, ¶ 36, 200 P.3d at 784–85. Similarly, in *Greenwalt,* we acknowledged that the legislature could reasonably conclude that it would be difficult to require vendors and their employees to substitute their judgment for that of the consumer as to what reasonable amount of alcohol could be consumed, especially where the vendor or employee would not necessarily even know if the consumer would be driving. *Greenwalt,* 2003 WY 77, ¶ 58, 71 P.3d at 737–38.

## CONCLUSION

[¶ 20] Wyo. Stat. Ann. § 12–8–301(a) does not encompass municipal ordinances in

the concept of "legally" as used therein, and the statute violates neither the constitutional doctrine of equal protection nor the constitutional prohibition of special laws.

[¶ 21] We affirm.

KITE, Chief Justice, dissenting, with whom HILL, Justice, joins.

[¶ 22] I disagree with the majority opinion's conclusion that the word "legally" as used in Wyo. Stat. Ann. § 12–8–301(a) (LexisNexis 2011) encompasses only violations of Title 12 and does not extend to violations of municipal ordinances. I also disagree that the legislature has preempted the field so as to preclude cities and towns from enacting ordinances intended to reduce damages caused by excessive consumption of alcohol in their communities. Were I writing the majority opinion, I would hold that § 12–8–301(a) means what it says—no person who *legally* provides alcohol to another person is liable for damages caused by that person's intoxication. I would further hold, however, that under § 12–8–301(a) a person who provides alcohol to another person in violation of the law, including a municipal ordinance, may be liable for such damages.

[¶ 23] Our standards for interpreting statutory provisions are well established:

> The paramount consideration is to determine the legislature's intent, which must be ascertained initially and primarily from the words used in the statute. We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute.

*Dorr v. Smith, Keller & Associates,* 2010 WY 120, ¶ 11, 238 P.3d 549, 552 (Wyo.2010).

[¶ 24] Section 12–8–301(a) unambiguously states that a person who legally provides alcohol to another is not liable for damages caused by the intoxication of the person. The word "legal" means "conforming to or permitted by law or established rules." *Webster's Third New Int'l Dictionary* 1290 (2002). Giving the word "legally" its plain and ordinary meaning as used in § 12–8–301(a), a person who provides alcohol to another in conformance with or as permitted by law or established rules is not liable for damages caused by the intoxication of the other person.

[¶ 25] An ordinance is a law adopted by a governmental authority, specifically, a municipality. *Webster's Third New Int'l Dictionary* 1588 (2002). Thus, a person who provides alcohol to another in conformance with or as permitted by ordinance is not liable under § 12–8–301(a). The immunity afforded by § 12–8–301(a), however, does not apply when a person provides alcohol in violation of the law. If the liquor vendors who provided alcohol to Mr. LaBrie did so in violation of the town ordinances, they can be liable for damages caused by his intoxication.

[¶ 26] In holding otherwise, the majority in essence construes § 12–8–301(a) to mean that a person who provides alcohol to another "in compliance with Title 12" is not liable for damages resulting from the other person's intoxication. This construction reads words into the statute that the legislature omitted, contrary to our standards for interpreting statutes. *Kennedy Oil v. Dep't of Revenue,* 2008 WY 154, ¶ 14, 205 P.3d 999, 1004 (Wyo. 2008). The plain and ordinary meaning of "legally" is not "in compliance with Title 12." Absent language expressly limiting the word legally to mean "in compliance with Title 12," I would give the word its plain meaning— "conforming to or permitted by law or established rules," which includes municipal ordinances.

[¶ 27] Also contrary to our standards of statutory interpretation, the majority's reading of § 12–8–301(a) makes superfluous subsection (c), which states: "This section does not affect the liability of the licensee or person if the alcoholic liquor or malt beverage

was sold or provided in violation of title 12 of the Wyoming statutes." If the legislature intended the word "legally" as used in subsection (a) to mean "in compliance with Title 12," subsection (c) is unnecessary. It is well established that we do not interpret a statute in a way that renders any portion meaningless. *Stutzman v. Office of the Wyoming State Engineer*, 2006 WY 30, ¶ 16, 130 P.3d 470, 475 (Wyo.2006). Additionally, when the legislature specifically uses a word in one place, we will not interpret that word into other places where it was not used. *Qwest Corp. v. Public Serv. Comm'n of Wyo.*, 2007 WY 97, ¶ 25, 161 P.3d 495, 501 (Wyo.2007).

[¶ 28] The majority also concludes "the legislature has, in effect, preempted the field as to [this] statewide social issue [and] it is not the province of municipalities to enact contrary laws." I disagree with this conclusion, first, because it ignores Art. 13 § 1 of the Wyoming Constitution and, second, because I see nothing in the ordinances at issue in this case that is contrary to the plain language of § 12–8–301(a).

[¶ 29] In 1972, Art. 13, § 1 of the Wyoming Constitution was amended to provide in pertinent part:

> (b) All cities and towns are hereby empowered to determine their local affairs and government as established by ordinance passed by the governing body, subject to referendum when prescribed by the legislature, and further subject only to statutes uniformly applicable to all cities and towns....
>
> ....
>
> (d) The powers and authority granted to cities and towns, pursuant to this section, shall be liberally construed for the purpose of giving the largest measure of self-government to cities and towns.

[¶ 30] Prior to this amendment, municipalities in Wyoming operated under Dillon's Rule, meaning they were considered a creature of the state with no inherent right of self government. Thomas S. Smith, *No Home on the Range for Home Rule*, 31 Land & Water L.Rev. 791, 793 (1996). The amendment was approved in 1972 by an overwhelming majority of Wyoming voters. *Id.* at 791 n. 2. With the amendment, Wyoming became one of

forty-eight states with some type of home rule. *Id.* at 794. "Home rule ... is based on the premise that municipalities should be free to regulate their own municipal affairs without interference from the state." *Id.* at 793. As reflected in Art. 13, § 1(b), a municipality's constitutional right to determine its local affairs "is subject [in relevant part] only to statutes uniformly applicable to all cities and towns."

[¶ 31] There is no language in Title 12 making § 12–8–301(a) applicable only to those who violate that title and I see nothing in the statutes suggesting it was meant to preclude cities and towns from exercising home rule with respect to alcohol. Moreover, the legislature has expressly authorized cities and towns to regulate alcohol and conduct resulting from excessive alcohol consumption.

[¶ 32] Wyo. Stat. Ann. § 12–4–101(a) (LexisNexis 2011) provides:

> Incorporated cities, towns and counties within Wyoming shall license and regulate or prohibit the retail sale of alcoholic and malt beverages under this title.

Wyo. Stat. Ann. § 15–1–103(a) (LexisNexis 2011) further provides:

> (a) The governing bodies of all cities and towns may:
>
> ....
>
> (xiii) ... regulate any business whatsoever conducted ... within the limits of the city or town for the purpose of raising revenue ...;
>
> ....
>
> (xv) Regulate ... saloons ...;
>
> (xviii) Regulate ... any ... conduct which disturbs or jeopardizes the public health, safety, peace ... in any public or private place;
>
> ....
>
> (xli) Adopt ordinances, resolutions and regulations, including regulations not in conflict with this act and necessary for the health, safety and welfare of the city or town ...;

[¶ 33] With these provisions, the legislature has clearly and unambiguously authorized cities and towns to enact ordinances regulat-

ing the sale and consumption of alcohol in their communities. Pursuant to Art. 13, § 1(d) the powers and authority granted to cities and towns "shall be liberally construed for the purpose of giving the largest measure of self-government to cities and towns." The majority opinion is directly contrary to this constitutional directive.

[¶ 34] As authorized by Art. 13, § 1 of the Wyoming Constitution and §§ 12–4–101(a) and 15–1–103(a) of the Wyoming Statutes, the town of Basin adopted Ordinance 2–2–5–1(E) which prohibits "[e]xcessive drinking of alcoholic and malt beverages . . . ." and the town of Greybull adopted Ordinance 9.40.020 which makes it unlawful for a saloon-keeper to "suffer any drunkenness . . . in his or her or their premises." To the extent that the liquor vendors who provided alcohol to Mr. LaBrie did so in violation of these ordinances, I would hold that the immunity provided under § 12–8–301(a) does not apply and they may be liable to the extent they failed to exercise the degree of care required of a reasonable person in light of all the circumstances. *McClellan v. Tottenhoff,* 666 P.2d 408, 412 (Wyo.1983).