# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Barber v. G.J. Partners, Inc.*, 2012 IL App (4th) 110992

---

| | |
|---|---|
| Appellate Court Caption | ANNETTE BARBER, Plaintiff-Appellee, v. G.J. PARTNERS, INC., Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0992 |
| Argued<br>Filed | July 10, 2012<br>August 22, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The accumulation of snow and ice on the parking lot at defendant's convenience store where plaintiff fell was a natural accumulation, regardless of the fact that the area had been plowed and salted, and defendant was not subject to liability for failing to remove the accumulation. |
| Decision Under Review | Appeal from the Circuit Court of Vermilion County, No. 08-L-36; the Hon. Michael D. Clary, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on Appeal    Richard A. Chapin (argued), of Chapin & Long, P.C., of Champaign, for appellant.

Mario C. Palermo (argued), of Woodruff, Johnson & Palermo, of Aurora, for appellee.

Panel    PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion.

Justices Appleton and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1    In September 2008, plaintiff, Annette Barber, filed an amended negligence complaint against defendant, G.J. Partners, Inc., following a fall with injury at a Danville gas station. In August 2011, a jury found in plaintiff's favor and awarded damages in the amount of $496,609.67, before reducing it to $372,457.25, which represented the jury's allocation of plaintiff's negligence in the amount of 25%.

¶ 2    On appeal, defendant argues the trial court erred in refusing to enter judgment in its favor as it had no duty to remove, warn, or protect against a natural accumulation of snow or ice. We reverse and remand with directions.

¶ 3                    I. BACKGROUND

¶ 4    In September 2008, plaintiff filed an amended negligence complaint against defendant for injuries suffered in a fall at defendant's gas station on February 16, 2007. The complaint alleged defendant failed to properly maintain its premises by allowing snow to be piled into an unnatural accumulation near its lined parking spaces, failed to warn plaintiff of the dangerous condition of its premises, and failed to adequately inspect the premises to prevent an unnatural accumulation of snow. Plaintiff alleged defendant's negligent acts and/or omissions caused her to trip and fall on the piled up snow adjacent to the customer parking spaces on defendant's premises. Plaintiff claimed she suffered serious and permanent personal injuries.

¶ 5    In June 2009, defendant filed a motion for summary judgment, claiming no evidence showed the accumulation of ice upon which plaintiff slipped was an unnatural accumulation or that it posed an unreasonable risk of harm to people on the property. In July 2009, the trial court denied the motion. In April 2010, plaintiff filed her second amended complaint. In August 2010, defendant filed a motion for summary judgment, which the court denied.

¶ 6    In August 2011, a jury trial was conducted. Alice Hoskins testified she was an assistant manager at the BP gas station in February 2007. She stated the normal procedure in wintery

conditions was to have someone plow the parking lots and have employees "put salt down on the metal plates out in the front, because they were slick." The two metal plates allowed access to gauges beneath the parking lot surface. A photo of one of the plates indicates it was approximately 45 inches in diameter. The face of the plate appears to be approximately one-half inch below the surface of the parking lot. The plates were near the front entrance to the convenience store.

¶ 7   Since the metal plates were not level with the ground, Hoskins stated the snowplows would fill or pack the plates with snow. After the snowplow was finished, employees would try to scrape the metal plates with a shovel and put salt or chemicals down. Hoskins stated the salt would have little or no effect when the temperature was below 28 degrees Fahrenheit. At that temperature or below, the salt "might melt just a little bit," like the top layer, and employees would "take a shovel and chip [the snow] away, if [they] could." When the top layer melted, a "slushy layer" would develop and vehicles running over the plate "would pack [the snow] down and you couldn't hardly do anything with it." Prior to February 16, 2007, Hoskins had slipped and fallen while going over the metal plates. She also had customers tell her the plates were slick. Hoskins stated she would mention to customers that the plates could be slick and for them to be careful. She also stated the station had cones but they were hardly ever used.

¶ 8   Danielle Osmundson's testimony was presented by her videotaped evidence deposition. She testified she worked at the BP gas station on February 16, 2007, and there was snow on the ground. During snowy conditions, employees were to clear the sidewalks and near the gas pumps. Both a shovel and salt were available. On the date in question, the snowplows had cleared snow from the lot. Osmundson stated the metal plates were "troublesome," as they "were always covered in ice and snow and very slippery." With the plates being slightly below ground, it was common for the snowplows to leave snow and ice on the them. Osmundson stated she would warn customers about the metal plates and tell them to be careful. Because the snowplow had left snow and/or ice on the metal plates, Osmundson and her boyfriend put salt down on the plates on the morning of plaintiff's fall. Approximately 20 to 30 minutes later, plaintiff parked her truck on top of a metal plate. Osmundson believed ice on the metal plate caused plaintiff to fall.

¶ 9   Plaintiff testified that on February 16, 2007, she and her husband drove from Champaign to Danville. With there being a snowstorm in the area a couple of days before, plaintiff stated it was "snowy out everywhere" but the roads were clear. She pulled into the gas station parking lot and "it looked like it had been cleaned." When she exited the vehicle, she stepped down, slipped, and broke her foot. After she was helped back into her truck, she looked down and noticed a circular spot of ice. As a result of her injury, plaintiff had to undergo three surgeries. She was unable to return to work as a certified nursing assistant and "couldn't get outside to do things [she] used to do."

¶ 10   On cross-examination, plaintiff testified she did not know whether she fell on the metal plate or the concrete, stating it was "a gray spot." She agreed that she testified in her discovery deposition that she did not look down before exiting the truck. She also testified in her deposition that she did not slip on a metal cover but thought it was ice on top of concrete.

¶ 11    The parties stipulated to plaintiff's medical bills. Plaintiff then rested. Defendant moved for a directed verdict, which the trial court denied. Defendant's evidence consisted of certified copies of weather records for February 2007. The temperature was near zero at the time of plaintiff's fall. Defendant then filed a motion for directed verdict at the close of all the evidence, arguing the snow and ice was a natural accumulation and defendant had no duty to warn or protect plaintiff from such an accumulation. The court denied the motion.

¶ 12    Following closing arguments, the jury found in plaintiff's favor. The jury listed the total amount of damages as $496,609.67, based on medical expenses of $75,276.33, pain and suffering of $250,000, lost earnings of $21,333.34, and loss of a normal life in the amount of $150,000. After finding plaintiff 25% negligent, the jury reduced the total award to $372,457.25.

¶ 13    In September 2011, defendant filed a motion for judgment notwithstanding the verdict, claiming there was no evidence to show defendant caused or contributed to the creation of an unnatural accumulation of snow or ice upon which plaintiff fell. In October 2011, the trial court denied the motion. This appeal followed.

¶ 14                                    II. ANALYSIS
¶ 15                                 A. Standard of Review
¶ 16    Defendant argues the trial court erred in failing to direct a verdict in its favor at the close of plaintiff's case and at the close of all the evidence and/or in failing to enter judgment notwithstanding the verdict. " '[V]erdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.' " *Jablonski v. Ford Motor Co.*, 2011 IL 110096, ¶ 88, 955 N.E.2d 1138 (quoting *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967)). "Because the standard for entry of judgment *n.o.v.* 'is a high one' [citation], judgment *n.o.v.* is inappropriate if 'reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented.' [Citation.]" *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178, 854 N.E.2d 635, 652 (2006). As a question of law is involved, review of a trial court's decision denying a motion for judgment *n.o.v.* is *de novo*. *York*, 222 Ill. 2d at 178, 854 N.E.2d at 652; see also *Lawlor v. North American Corp. of Illinois*, 409 Ill. App. 3d 149, 161, 949 N.E.2d 155, 170 (2011) (*de novo* standard is utilized when reviewing a trial court's denial of motions for directed verdict and for judgment *n.o.v.*).

¶ 17                              B. Natural Accumulation Rule
¶ 18    Defendant argues the condition in the parking lot causing plaintiff's fall was a natural accumulation for which it owed plaintiff no duty. We agree.

¶ 19    To prove a claim of negligence, "a plaintiff must establish the existence of a duty, a breach of the duty, and an injury to the plaintiff that was proximately caused by the breach." *Vancura v. Katris*, 238 Ill. 2d 352, 373, 939 N.E.2d 328, 342 (2010). "Under the natural

accumulation rule, a landowner or possessor of real property has no duty to remove natural accumulations of ice, snow, or water from its property." *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 227, 938 N.E.2d 440, 447 (2010). Even when landowners voluntarily remove snow, they do not owe a duty to remove natural accumulations of ice underneath the snow. *Koziol v. Hayden*, 309 Ill. App. 3d 472, 476, 723 N.E.2d 321, 324 (1999); see also *Endsley v. Harrisburg Medical Center*, 209 Ill. App. 3d 908, 910, 568 N.E.2d 470, 471 (1991) ("The mere removal of snow which may leave a natural ice formation on the premises does not constitute negligence.").

¶ 20    Along with snow removal operations like shoveling and plowing, "[t]he mere sprinkling of salt, causing ice to melt, although it may later refreeze, does not aggravate a natural condition so as to form a basis for liability on the part of the property owner." *Harkins v. System Parking, Inc.*, 186 Ill. App. 3d 869, 873, 542 N.E.2d 921, 924 (1989); *Lewis v. W.F. Smith & Co.*, 71 Ill. App. 3d 1032, 1038, 390 N.E.2d 39, 43 (1979). "Ruts and uneven surfaces created by traffic in snow and ice are not considered unnatural and cannot form the basis for liability." *Harkins*, 186 Ill. App. 3d at 872, 542 N.E.2d at 924.

¶ 21    Although a property owner has no duty to remove natural accumulations, he "may be subject to liability if his voluntary undertaking to remove snow and ice is performed in a negligent manner." *Judge-Zeit v. General Parking Corp.*, 376 Ill. App. 3d 573, 581, 875 N.E.2d 1209, 1216 (2007). Liability may arise if the snow or ice "accumulated because the owner either aggravated a natural condition or engaged in conduct which created a new, unnatural or artificial condition." *Whittaker v. Honegger*, 284 Ill. App. 3d 739, 743, 674 N.E.2d 1274, 1276 (1996).

¶ 22    In the case *sub judice*, defendant argues the only evidence was that the snow or ice in the parking lot was a natural accumulation from a prior snowstorm. Further, defendant claims the snow or ice on the metal plate remained after the lot had been plowed and salt had been sprinkled in the vicinity. Thus, defendant claims it cannot be held liable under the natural accumulation line of cases.

¶ 23    Here, the snow event that fell on the Danville area created a natural accumulation in defendant's parking lot. To help remedy the situation, an independent contractor plowed the lot and Osmundson and her boyfriend put salt down on the metal plates. We find the facts of this case fall under the natural accumulation rule.

¶ 24    In support of the jury verdict, however, plaintiff contends defendant's snow removal efforts created an unnatural accumulation on the metal plates that contributed to her fall. We find the "salting" aspect of the natural accumulation rule instructive. As stated, "[t]he mere sprinkling of salt, causing ice to melt, although it may later refreeze, does not aggravate a natural condition so as to form a basis for liability on the part of the property owner." *Harkins*, 186 Ill. App. 3d at 873, 542 N.E.2d at 924; see also *Riccitelli v. Sternfeld*, 1 Ill. 2d 133, 136-37, 115 N.E.2d 288, 290 (1953) (finding no liability where the defendant shoveled, an alternate thaw and freeze caused snow to melt, run onto sidewalk and freeze, and the defendant applied rock salt). The application of salt to an accumulation of snow and/or ice causes a change in the composition of the wintery mix. If the melted material refreezes, the composition will again change and form a new accumulation, one that the case law does not

consider unnatural. The same can be said in regard to plowing operations. A snowplow traversing a snowy parking lot, and even over a recessed metal plate as in this case, may change the composition of what is below the plow, but what remains does not amount to an unnatural accumulation. See *Scott & White Memorial Hospital v. Fair*, 310 S.W.3d 411, 419 (Tex. 2010) (stating "salting, shoveling, or applying deicer to a natural ice accumulation does not transform it into an unnatural one"). As a natural accumulation resulted from defendant's plowing and salting, defendant had no duty to remove it and could not have been liable for plaintiff's injuries.

¶ 25 We note shoveling and plowing snow-covered parking lots, along with salting ice-covered walkways, are desirable actions in this part of the country during the winter months. See *Riccitelli*, 1 Ill. 2d at 137, 115 N.E.2d at 290. But rarely can such remedial operations be done perfectly. See *Ordman v. Dacon Management Corp.*, 261 Ill. App. 3d 275, 281, 633 N.E.2d 1307, 1311-12 (1994) (stating "it is unrealistic to expect property owners to keep all areas where people may walk clear from ice and snow at all times during the winter months"). Moreover, requiring such perfection would cause an unreasonable burden on property owners in this state. See *Kellermann v. Car City Chevrolet-Nissan, Inc.*, 306 Ill. App. 3d 285, 290, 713 N.E.2d 1285, 1289 (1999) (noting "courts have consistently found it an unreasonable burden for a business to keep small areas such as parking lots, sidewalks, and entryways safe from naturally accumulated snow and ice"). To hold a property owner liable in these situations, absent certain circumstances, "would place the defendant in the position of an absolute insurer of the safety of its business invitees contrary to the settled law of our state." *Zide v. Jewel Tea Co.*, 39 Ill. App. 2d 217, 227, 188 N.E.2d 383, 388 (1963).

¶ 26 In this case, defendant took steps to clear the parking lot. Such actions are to be encouraged. While defendant's removal and remediation of the snow may not have been perfect, the natural accumulation rule does not require perfection. Otherwise, property owners would be held to an onerous burden and would most likely find it more advantageous to forego snow-removal operations altogether. Because plaintiff's evidence failed to show an unnatural accumulation here, defendant could not be held liable. Therefore, judgment notwithstanding the verdict should have been granted.

¶ 27                                III. CONCLUSION

¶ 28 For the reasons stated, we reverse the trial court's judgment and remand with directions to set aside the verdict and judgment entered thereon and enter judgment for defendant.

¶ 29 Reversed and remanded with directions.