# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 13

### OCTOBER TERM, A.D. 2016

### February 7, 2017

RB, JR., an infant, by and through his next
friends, ROBBY & CORRINA BROWN,

Appellants
(Plaintiffs),

v.                                                                S-16-0142

BIG HORN COUNTY SCHOOL
DISTRICT NO. 3,

Appellee
(Defendant).

*Appeal from the District Court of Big Horn County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellants:*
    Philip E. Abromats and Letitia C. Abromats of Philip E. Abromats, P.C., Greybull,
    Wyoming.  Argument by Ms. Abromats.

*Representing Appellee:*
    Nicholas T. Haderlie and Christopher C. Voigt of Crowley Fleck PLLP, Sheridan,
    Wyoming.  Argument by Mr. Haderlie.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]  RB and his friends were enjoying some of the exhilarating qualities of ice on the sidewalk at Greybull Middle School when RB fell and suffered a broken tooth, fractured nose, and some facial lacerations.  He sued Big Horn County School District No. 3 (School District), alleging that it was negligent in failing to remove the ice that had accumulated on the sidewalk.  The district court granted the School District's motion for summary judgment, and RB appeals. We affirm.

*ISSUES*

[¶2]  1. Is the failure to file a W.R.C.P. 56.1 statement of undisputed material facts fatal to RB's appeal?

2.  Is the question of whether there was a natural accumulation of snow and ice a fact issue that should have been submitted to a jury?

3.  Does the Greybull snow removal ordinance establish a heightened duty of care?

4.  Is RB's comparative negligence a fact issue that must go to a jury?

*FACTS*[1]

[¶3]  On February 20, 2014, RB and his classmates left the Greybull Middle School gymnasium after their P.E. class and were returning to the classroom building next door. While they were between buildings, RB and some friends spotted a patch of ice on the sidewalk and began running and sliding on it.  According to one student, the group was having a contest to see who could slide the farthest, and another student testified that they were sliding to see who could "do the coolest trick."  RB took his second turn to slide, lost his balance, and fell on the ice, breaking a tooth, fracturing his nose, and lacerating his face.

[¶4]  The ice patch was described as large and of varying thickness.  It was obvious and not hidden from view in any way.  RB and other witnesses testified that it did not appear as if anyone had done anything to make the accumulation of ice worse than it would have been naturally.  One witness, however, testified that the students, including RB, had taken snow from the grass and sprinkled it onto the ice in order to make it more slippery.  Ice melt had been applied to the patch by School District maintenance personnel.

---

[1] For the reasons discussed *infra* at ¶¶ 7-8, we rely only on those facts presented to the district court by the School District.

1

[¶5]   The Town of Greybull had 0.01 inches of snow on February 20, 2014, the day of the accident.  There was no snow the previous day.  The greatest amount of precipitation received in Greybull in February was 0.08 inches on February 9.  The maintenance director for the School District and other witnesses testified that the district's practice is to remove snow and apply ice melt daily when snow or ice is present.  There is no evidence in the record that it failed to do so on the day of the accident.

## STANDARD OF REVIEW

[¶6]   We apply the following standard of review to a district court's grant of summary judgment in a negligence case:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. *Gayhart v. Goody*, 2004 WY 112, ¶ 11, 98 P.3d 164, 168 (Wyo. 2004).  Summary judgment is proper only when there are no genuine issues of material fact, and the prevailing party is entitled to judgment as a matter of law. *Id.* . . . .
>
> . . . .
>
> Summary judgments are not favored in negligence actions and are subject to exacting scrutiny. *Erpelding v. Lisek*, 2003 WY 80, ¶ 10, 71 P.3d 754, 757 (Wyo. 2003).  However, even in negligence actions, "where the record fails to establish an issue of material fact, [and when the movant is entitled to judgment as a matter of law], the entry of summary judgment is proper." *Allmaras v. Mudge*, 820 P.2d 533, 536 (Wyo. 1991) (alteration in original) (citing *MacKrell v. Bell H2S Safety*, 795 P.2d 776, 779 (Wyo. 1990)).

*Amos v. Lincoln Cty. Sch. Dist. No. 2*, 2015 WY 115, ¶ 15, 359 P.3d 954, 958-59 (Wyo. 2015) (some citations omitted).

## DISCUSSION

### I.    Is the failure to file a W.R.C.P. 56.1 statement of undisputed material facts fatal to RB's appeal?

[¶7]   The School District filed a motion for summary judgment, an accompanying brief, and a Rule 56.1 statement.  In response, RB filed a Brief in Opposition to Motion for Summary Judgment, which included a statement of facts with citations to the record, but

RB did not file a separate Rule 56.1 statement of material facts at that time. One day later, on the morning of the hearing on the School District's motion for summary judgment, RB filed his Rule 56.1 statement. At the hearing, the School District moved to strike, and the district court granted the motion and struck RB's Rule 56.1 statement.

[¶8]    The School District argues that we should not review the district court's decision striking RB's Rule 56.1 statement because RB did not raise the issue.[2]  We agree. Because RB did not appeal the issue in his opening brief, we will not decide whether the district court abused its discretion in striking the statement.  *See Ultra Res., Inc. v. McMurry Energy Co.*, 2004 WY 121, ¶ 11, 99 P.3d 959, 963 (Wyo. 2004).  The School District also contends that RB's failure to file a Rule 56.1 statement is "fatal to this appeal."

[¶9]    Rule 56.1 provides:

> Upon any motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, in addition to the materials supporting the motion, there shall be annexed to the motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.
>
> ***In addition to the materials opposing a motion for summary judgment, there shall be annexed a separate, short and concise statement of material facts as to which it is contended that there exists a genuine issue to be tried.***
>
> Such statements shall include pinpoint citations to the specific portions of the record and materials relied upon in support of the parties' position.

(Emphasis added.)

[¶10]  "[S]tatements of undisputed facts under W.R.C.P. 56.1 do not establish those facts standing alone.  Rule 56.1 statements are only intended 'to identify just what facts are actually in dispute.'" *Herling v. Wyo. Mach. Co.*, 2013 WY 82, ¶ 62, 304 P.3d 951, 966 (Wyo. 2013) (internal citation omitted).  The purpose underlying rules such as W.R.C.P.

---

[2] Even in his reply brief, RB does not argue that we should reverse the district court's decision to strike his Rule 56.1 statement.  Rather, he takes the position that he essentially complied with the rule because his brief contained facts with citations to the record and that the district court considered the facts presented by him notwithstanding the stricken 56.1 statement (It is not apparent that is what the district court did.).  In addition, RB contends that even the facts presented by the School District, when viewed in the light most favorable to RB, would be sufficient to find in his favor.

56.1 is to provide a tool "for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of hunt[ing] through voluminous records without guidance from the parties." *N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (internal quotation marks and citations omitted). However, district courts may decline to rely on such statements and may examine the evidence submitted by the parties independently. *Id.* ("[T]he district court declined to rely solely on the parties' . . . statements, and instead 'scour[ed] . . . the record' independently.").

[¶11] In *Grynberg v. L & R Exploration Venture*, 2011 WY 134, ¶ 21, 261 P.3d 731, 737 (Wyo. 2011), we stated that "a party's failure to comply with Rule 56.1 by pointing out to the district court the facts creating a genuine issue of material fact *may* be fatal to an appeal." (Emphasis added.) There, L & R moved for summary judgment but failed to file its Rule 56.1 statement. *Id.* Ms. Grynberg did not object until after the district court heard and ruled on the motion, and we affirmed the district court's ruling that the objection was waived. *Id.*

[¶12] Here, however, the School District did raise RB's noncompliance with Rule 56.1 in a timely fashion. Nonetheless, the belated filing of RB's Rule 56.1 statement, and its subsequent removal from the record, is not fatal to his appeal. While the Rule 56.1 statement was stricken by the district court and continues to be stricken because RB did not appeal that issue, RB's argument for reversal of the summary judgment order is not based on a contention that disputed issues of fact existed; rather, he argues that the School District was not entitled to judgment as a matter of law. We accept the School District's statement of undisputed facts, along with RB's concession that those facts do not differ materially from those he attempted to present, and conclude that, under these circumstances, his failure to file a Rule 56.1 statement is not fatal to his appeal. The facts are adequately presented to allow us to address the issues of law.

## II. Is the question of whether there was a natural accumulation of snow and ice a fact issue that should have been submitted to the jury?

[¶13] To establish negligence, a plaintiff must prove that (1) the defendant owed the plaintiff a duty to conform to a specified standard of care; (2) the defendant breached the duty of care; (3) the breach proximately caused injury to the plaintiff; and (4) the injury is compensable by money damages. *Valance v. VI-Doug, Inc.*, 2002 WY 113, ¶ 8, 50 P.3d 697, 701 (Wyo. 2002). "The application of the natural accumulation rule relates to the threshold question of whether a duty exists . . . ." *Selby v. Conquistador Apartments, Ltd.*, 990 P.2d 491, 494 (Wyo. 1999). Typically, the question of the existence of a duty is a question of law determined by the courts. *Id.*

[¶14] In Wyoming, we apply the natural accumulation rule to premises liability claims. That rule provides:

[A] proprietor is not considered negligent for allowing the natural accumulation of ice due to weather conditions where he has not created the condition. The conditions created by the elements, such as the forming of ice and falling of snow, are universally known and there is no liability where the danger is obvious or is as well known to the plaintiff as the property owner.

*Bluejacket v. Carney*, 550 P.2d 494, 497 (Wyo. 1976); *see also Paulson v. Andicoechea*, 926 P.2d 955, 957 (Wyo. 1996). We adopted the natural accumulation rule in *Watts v. Holmes*, 386 P.2d 718, 719 (Wyo. 1963), where we held that a store owner cannot be considered negligent "for allowing the natural accumulation of ice due to weather conditions, where he has not created the condition."

[¶15] The rationale underlying the rule is that "[t]he plaintiff is in a much better position to prevent injuries from ice or snow because the plaintiff can take precautions at the very moment the conditions are encountered." *Eiselein v. K-Mart, Inc.*, 868 P.2d 893, 898 (Wyo. 1994). When the snow or ice occurs naturally, the defendant is not in any better position than the plaintiff to foresee and prevent injuries, and therefore the defendant has no duty to remove the hazard. Thus, "the open-and-obvious-danger exception is contained within, and is part and parcel of, the natural accumulation rule." *Valance*, 2002 WY 113, ¶ 10, 50 P.3d at 701; *see also Paulson*, 926 P.2d at 957.

[¶16] The natural accumulation rule, however, ceases to apply when

the accumulation of ice or snow is not a natural accumulation, but rather an artificial condition created by the defendant. If the defendant creates the hazard, then it is in within the defendant's control and he is in a better position to foresee and prevent injuries resulting from the hazard.

*Eiselein*, 868 P.2d at 898. Where the accumulation of ice or snow is not "natural," a proprietor has a duty of care to invitees[3] on the premises. In *Eiselein*, we held that "an unnatural accumulation of ice . . . will be found if the owner or occupier *creates an accumulation of water* in a manner *substantially different in volume or course* than would naturally have occurred." *Id*. (emphasis in original). In *Pullman v. Outzen*, 924 P.2d 416, 418 (Wyo. 1996), we modified that test, holding that

---

[3] We recognize that Wyoming law no longer distinguishes between invitees and licensees, *see Clarke v. Beckwith*, 858 P.2d 293, 294 (Wyo. 1993) (We "abandon a portion of the common-law rule which distinguishes between tort claimants on the basis of whether their status is licensee or invitee."), and use the term "invitee" only because that is the term used in many of our cases examining the question of whether any specific accumulation is "natural."

5

[t]o prove that an accumulation of snow and ice is unnatural, a plaintiff must show that the defendant created or aggravated the hazard, that the defendant knew or should have known of the hazard, and that the hazardous condition was substantially more dangerous than it would have been in its natural state.

*Id*.; *see also Pinnacle Bank v. Villa*, 2004 WY 150, ¶ 6, 100 P.3d 1287, 1290 (Wyo. 2004); *Selby*, 990 P.2d at 494; *Paulson*, 926 P.3d at 957. We have also held that "no duty exists which requires either the removal of an obvious danger or a warning of its existence." *Pinnacle Bank*, 2004 WY 150, ¶ 6, 100 P.3d at 1290.

[¶17] The district court concluded that the accumulation of ice in this case was both obvious and natural, and granted summary judgment to the School District on the question of whether there was a duty. On appeal, RB contends that there is a fact issue whether the ice on the sidewalk was a natural accumulation or whether its condition was aggravated by the School District when it applied ice melt, creating an unnatural accumulation. In addition, RB argues that a jury could conclude that the School District was negligent in applying an insufficient amount of ice melt. The School District argues that the hazard was natural and presented an obvious danger.

[¶18] Our previous applications of the natural accumulation rule have arisen in a variety of scenarios from which it is not always easy to discern a clear rule.[4] In *Pullman*, the appellant fell on snow and ice that had accumulated on steps and been packed by pedestrian traffic. 924 P.2d at 417-18. We concluded that "pedestrian packed snow and ice is not substantially more dangerous than snow and ice in its natural state," and we held that it "is a natural accumulation" such that the owner of the premises was not liable for injuries sustained as a result of a slip and fall on that accumulation. *Id*. at 418.

[¶19] Similarly, in *Paulson*, we held that packed and frozen snow in a parking lot is a natural accumulation. 926 P.2d at 958. Although the record established that "it had snowed on the parking lot, that ice had built up, and that Cody Motel did not undertake to remove the snow and ice," we explained that Paulson could not establish the motel's liability because she had failed to establish that the snow and ice was "in a substantially more dangerous state than its natural state." *Id*. We also noted that "Paulson was aware, or should have been aware, of the open and obvious danger the snow and ice posed in the parking lot." *Id*.

---

[4] The natural accumulation rule has been criticized as a rule with numerous shortcomings that has produced "irreconcilable decisions in Wyoming." *Valence*, 2002 WY 113, ¶¶ 19-28, 50 P.3d at 704-05 (Spangler, D.J., retired, dissenting) (calling for the abrogation of the natural accumulation rule); *see also Eiselein*, 868 P.2d at 899-900 (Macy, C.J., specially concurring) (criticizing the natural accumulation rule as "incompatible" with Wyoming's comparative-negligence statute).

[¶20] By contrast, in *Eiselein*, the appellant had fallen on a patch of black ice in the K-Mart parking lot. She claimed that K-Mart was negligent in failing to inspect the lot, warn its customers of the icy condition, and place salt or sand on the icy spots. *Eiselein*, 868 P.2d at 894. We reversed summary judgment and remanded, directing the district court to determine whether there was a question of fact concerning whether the accumulation was natural or unnatural. *Id*. at 898. In *Selby*, Mrs. Selby, a resident of the Conquistador apartment complex, fell on a patch of ice next to a dumpster and broke her leg. 990 P.2d at 493. The dumpster was located in the parking lot of the complex and the evidence revealed that the manager usually plowed and applied ice melt to the area around the dumpster, except when a car was parked close to the dumpster, preventing plow access. *Id*. On the day of Mrs. Selby's injury, the weather was dry and much of the snow in the parking lot had melted; however, the area between the dumpster and a parked vehicle was shaded by the vehicle and a patch of black ice had formed. *Id*. Mrs. Shelby alleged that Conquistador was negligent in its maintenance of the parking lot and the district court granted Conquistador summary judgment. *Id*. On appeal, we concluded that there were material facts at issue regarding whether Conquistador aggravated the accumulation of ice around the dumpster by locating the dumpster in such a position that resulted in the accumulation of ice between the parked car and the dumpster. *Id*. at 495-96.

[¶21] In *Valance*, we again concluded that there was a question of fact regarding whether the defendant had created a hazardous condition. 2002 WY 113, ¶ 16, 50 P.3d at 704. That case concerned the wind, which we recognized was a naturally occurring force, like snow and ice, and we applied the same test to determine whether a duty existed. *Id*., ¶ 12, 50 P.3d at 702-03. On an especially windy day, Mrs. Miles and her grandson decided to dine at the Village Inn Restaurant. *Id*., ¶ 5, 50 P.3d at 700. A sign on the door instructed patrons to "Please Hold Door Tight Due to Wind," *id.*, ¶ 13, 50 P.3d at 703, and Mrs. Miles testified that she followed the sign's directions, and as she opened the door, a strong gust of wind caught it, causing her to fall to the ground and break her hip. *Id*., ¶ 5, 50 P.3d at 700. The district court concluded that the wind was naturally occurring and granted summary judgment to the owner of the restaurant. *Id*. ¶ 6, 50 P.3d at 700. On appeal, we affirmed in part, reversed in part, and remanded, holding that there remained questions of fact as to whether the restaurant:

> (1) created a hazardous situation by directing patrons to take specific action; (2) knew or should have known the directions given could create a hazard to patrons; and, finally, (3) by giving directions, created a hazardous condition substantially more dangerous than it would have been in the absence of the directions.

*Id*., ¶ 16, 50 P.3d at 704.

7

[¶22]  The undisputed facts distinguish this case from all of our precedent.  The School District placed ice melt on the patch of ice where RB fell, and thus, the ice was altered.  However, to prove that the ice was in an unnatural state for the purposes of establishing premises liability, RB was required to show (1) that the School District created or aggravated the hazard, (2) that the School District knew or should have known of the hazard, and (3) that the hazardous condition was substantially more dangerous than it would have been in its natural state.  *Pullman*, 924 P.2d at 418.  There is no evidence indicating a fact dispute as to whether the School District created or aggravated the ice, or whether the condition was more dangerous than it would have been in its natural state.  Deposition testimony confirmed that the School District undertook to remove snow and ice from the premises on a daily basis, and did not do anything to make the hazard more dangerous than it was naturally.

[¶23]  RB argues that the ice melt created "rotten ice" which caused RB's sliding motion to be impeded, aggravating the slippery condition of the ice.  Other jurisdictions have examined whether the application of salt or ice melt changes the condition of snow or ice for purposes of the natural accumulation rule.  For example, in *Harkins v. System Parking, Inc.*, 542 N.E.2d 921, 924 (Ill. App. Ct. 1989), the plaintiff had argued that ice in a parking lot was not in a natural condition because the defendant had salted the area.  The appellate court rejected that argument, holding that "[t]he mere sprinkling of salt, causing the ice to melt, although it may later refreeze, does not aggravate a natural condition so as to form a basis for liability on the part of the property owner."  *Id*. (citations omitted).  *See also Barber v. G.J. Partners, Inc.*, 974 N.E.2d 452, 457 (Ill. App. Ct. 2012) (finding no liability where the defendant plowed the parking lot and placed salt on metal plates); *Lehman v. Cracker Barrel Old Country*, No. 2004-CV-0048, 2005 WL 267658, ¶ 30, at *4 (Ohio Ct. App. 2005) ("[T]he mere fact that Cracker [B]arrel salted the sidewalk and then allowed the sidewalk to freeze again does not turn a natural accumulation of snow and ice into an accumulation that is unnatural."); *Zielinski v. Szokola*, 423 N.W.2d 289, 293-94 (Mich. Ct. App. 1988) (*overruled on other grounds by Robinson v. City of Detroit*, 586 N.W.2d 116 (Mich. Ct. App. 1998) (holding that ice that had been salted was a natural accumulation because "Salting does not create a hazard, instead it only alleviates, albeit temporarily, a hazard that already existed."); *Riccitelli v. Sternfeld*, 115 N.E.2d 288, 290 (1953) (finding no liability where the defendant shoveled, an alternate thaw and freeze caused snow to melt, run onto sidewalk and freeze, and the defendant applied rock salt to the ice).  We agree with the reasoning of these cases and find that, while application of ice melt may have altered the condition of the ice, there is no evidence to suggest that it made the condition of the ice more dangerous.  There are no facts in dispute that could lead to a conclusion that the School District had any duty arising from the presence of ice on the school's sidewalk.

[¶24]  This conclusion is supported by important policy considerations.  We reside in a climate where there are frequent snowstorms and sudden changes of temperature.  Shoveling and plowing snow-covered walks, driveways and parking lots, and applying

8

ice melt to ice-covered areas, are behaviors which should be encouraged. *See Barber*, 974 N.E.2d at 457. "[S]alting, shoveling, or applying deicer to a natural ice accumulation does not transform it into an unnatural one. To find otherwise would punish business owners who, as a courtesy to invitees, attempt to make their premises safe." *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 419 (Tex. 2010).

[¶25] There is no dispute that the danger was obvious -- that is the reason RB and his friends chose that spot to run and slide. The district court properly concluded that there was no issue of fact regarding whether the accumulation of ice was natural, and we affirm its grant of summary judgment on that issue.

### III. Does the Greybull snow removal ordinance establish a heightened duty of care?

[¶26] The district court concluded that "the violation of an ordinance cannot be used to establish a landowner's negligence per se" and granted summary judgment on RB's claim that the School District's alleged violation of the Greybull snow removal ordinance constituted negligence per se. RB argues that the School District's duty of care was established by the Greybull snow removal ordinance. In other words, notwithstanding the absence of a common-law duty to remove natural accumulations of snow and ice, a municipal ordinance requiring snow removal imposes an additional duty on a defendant. In the alternative, RB contends that a violation of the ordinance is, at a minimum, evidence of negligence. In response, the School District argues that the ordinance has no bearing on the facts of this case, as it does not apply and was not violated.

[¶27] In *Pinnacle Bank*, we considered the impact of a snow removal ordinance on the common-law duty to remove unnatural accumulations of snow and ice. There, we explained that the violation of a snow removal ordinance "might be used as evidence of the landowner's negligence, but it would not establish the landowner's negligence per se[,]"and we commented that "when a conglomeration of circumstances are relied on in order to find the statutory or regulatory violation, use of the negligence per se doctrine is not desirable." *Pinnacle Bank*, 2004 WY 150, ¶ 8, 100 P.3d at 1290-91. We then articulated the proper role an ordinance might play in a negligence action. We recognized that Worland's snow removal ordinance[5] evidenced the city's "clear intent" to

---

[5] The City of Worland's ordinance specified

> that it is the affirmative duty of an occupant, owner, or agent of property within the city limits of Worland, Wyoming to keep the sidewalks in front of and adjoining the premises safe and clear for pedestrians and to repair the same from time to time. ***This duty explicitly includes the responsibility to remove snow, ice, slush, mud, or other impediment with all reasonable dispatch to assure safe and convenient foot travel.***

*Id*., 2004 WY 150, ¶ 10, 100 P.3d at 1291 (emphasis added).

9

establish a "heightened standard of care," *id.*, ¶ 10, 100 P.3d at 1291, and held that the city's "ordinance creates an affirmative duty for an owner, occupant, or agent of property within the city limits to remove snow, ice, slush, or other impediment with all reasonable dispatch." *Id.*, ¶ 13, 100 P.3d at 1292. With the application of a heightened standard of care, there was no need to determine whether the accumulation in that case was natural or unnatural. *Id.*

[¶28] In *Paulson*, we also considered the impact of local ordinances on the common law duty to remove natural accumulations of snow and ice. Paulson relied upon two Rock Springs ordinances to argue that the Cody Motel had a heightened duty to remove snow and ice from its parking lot. *Paulson*, 926 P.2d at 958. The first ordinance required owners or occupiers of premises within the city to keep sidewalks free of snow and ice. *Id.* We held that because Paulson had fallen in a parking lot, not on a sidewalk, that ordinance was irrelevant. *Id.* The second ordinance prohibited "causing or permitting a pool of water to form, stand or flow upon any street, sidewalk, alley or other public ground." *Id.* We concluded that because there was no evidence in the record that the motel had caused or permitted a pool of water to form, that ordinance could not support Paulson's claim that it created a duty applicable to her. *Id.* at 958-59.

Here, Greybull's Municipal Ordinance 12.12.020 provides:

> Within 24 hours after any accumulation of snow greater than one-half inch, all persons and places of business shall cause the snow to be removed from the sidewalks in front of and adjacent to the premises occupied or owned by them.

Greybull, Wyo., Code § 12.12.020 (2009, Supp. Oct. 25, 2016).

[¶29] The School District argues that this ordinance does not apply because it only applies to snow and because there was not a half-inch accumulation of snow in Greybull during the month of February 2014. It is undisputed that RB fell while sliding on a patch of ice, not snow, and the ordinance requires "snow to be removed," not ice. Thus, it would appear that the School District's position is correct.

[¶30] RB counters, however, that the ice may have been formed by foot traffic on snow that had not been removed. He asserts, "It could very easily be that, being on a heavily traveled route between the gym and the middle-school classrooms, the snow had been packed down and turned to ice." The problem with this assertion is that it is speculative. "Speculation, conjecture, the suggestion of a possibility, guesses, or even probability are insufficient to establish an issue of material fact." *Jones v. Schabron*, 2005 WY 65, ¶ 11, 113 P.3d 34, 38 (Wyo. 2005); *see also Knight ex rel. Knight v. Estate of McCoy*, 2015 WY 9, ¶ 24, 341 P.3d 412, 418 (Wyo. 2015). There is nothing in the record to indicate

that foot traffic packed the snow to create the ice. There is no evidence or testimony regarding how the ice patch formed, nor is there any evidence suggesting that snow had remained on the sidewalk and had been trampled down. In fact, the undisputed evidence is that, as a matter of course, the School District removed snow every morning when there was an accumulation, and there is no evidence that it failed to do so. The snow removal ordinance is irrelevant to these facts. It does not create a separate or heightened duty of care, nor is it evidence of negligence.

## IV.   Is RB's comparative negligence a fact issue that must go to a jury?

[¶31]  In its decision letter, the district court remarked that "[t]he Plaintiff testified in his own deposition that he would not have fallen if he had not run and slid on the ice." RB contends that any consideration of his decision to slide on the ice pertains to the issue of comparative negligence, and thus the district court erred when it alluded to this choice to rule on the School District's summary judgment motion. In making this argument, RB relies upon *Pinnacle Bank*, in which we stated that once a heightened duty is found based upon the existence of an ordinance, the open-and-obvious-danger rule would apply for comparative negligence purposes. 2004 WY 150, ¶ 12, 100 P.3d at 1291-92.

[¶32]  Here, however, we have determined that there was no duty -- the accumulation was natural and obvious and there was no other duty based upon Greybull's ordinance because it did not apply to the facts of this case. Therefore, RB has failed to establish a prima facie case of negligence. As a result, we need not address the question of his comparative negligence. *See* Wyo. Stat. Ann. 1-1-109 (LexisNexis 2015).

## CONCLUSION

[¶33]  RB's late filed Rule 56.1 statement, and its subsequent removal from the record, is not fatal to his appeal. There are no genuine issues of material fact; the School District had no duty either under the natural accumulation rule or based on Greybull's snow removal ordinance. As a result, RB cannot establish a prima facie case of negligence. Consequently, we do not reach the question of comparative negligence. Affirmed.